Cynthia HUNTER, Appellant,

v.

Ronald HUNTER; Caner Hunter; and Betty Hunter, Appellees.

No. 2002–CA–000519–MR.

Court of Appeals of Kentucky.

July 3, 2003.

Discretionary Review Denied by Supreme Court March 10, 2004.

John T. Chafin, Prestonsburg, KY, for appellant.

Jerry A. Patton, Prestonsburg, KY, for appellee—Ronald D. Hunter.

Gregory D. Stumbo, Prestonsburg, KY, for appellees—Caner Hunter and Betty G. Hunter.

Before BUCKINGHAM, McANULTY, and PAISLEY, Judges.

## OPINION

BUCKINGHAM, Judge.

Cynthia Hunter appeals from an order of the Floyd Circuit Court which included the disposition of property upon dissolution of the marriage between Cynthia and Ronald Hunter. Cynthia challenges the assignment of the remainder interest in certain real property to Ronald as his nonmarital property acquired through gift from his parents, Caner and Betty Hunter. We affirm.

Cynthia and Ronald Hunter were married in November 1978 and separated in March 2001. On January 1, 1982, Caner and Betty Hunter conveyed their interest, with reservation of a life estate, in two tracts of land by deed to Cynthia and Ronald as joint tenants with right of survivorship. The deed stated that the property was being conveyed "for and in consideration of the sum of One dollar ($1.00), cash in hand paid, and in further consideration of the love and affection the parties of the first part have for their son, the male grantee herein." The property included a house on one of the tracts, which became Cynthia and Ronald's marital residence,[1] and was located next to the property on which Caner and Betty Hunter resided.

Shortly thereafter, the parties constructed a detached two-car garage, a barn, and an outbuilding for use connected with an above-ground swimming pool on the property. In December 1985, a fire destroyed the parties' residence. A few months later, a new house was built with $90,000 in insurance proceeds from a homeowner's insurance policy on the home.

On March 8, 2001, Ronald filed a petition for dissolution of marriage in which he sought to be awarded his nonmarital property and an equitable portion of the parties' marital property. In May 2001, pursuant to a motion filed by Cynthia, Caner and Betty Hunter were added as parties because of their life estate interest in the real property. In their discovery documents, Cynthia sought equal division of the real property as marital property, exclusive of any claimed interest by Caner and Betty Hunter; whereas, Ronald requested an award of the real property as his nonmarital property.

At a hearing held before the domestic relations commissioner (DRC) on October 15, 2001, Cynthia, Ronald, Caner, and Betty Hunter all testified. Caner and Betty Hunter testified that they would not have included Cynthia on the deed except for the fact that she and Ronald were married. Cynthia also acknowledged that she was included on the deed only because she was married to Ronald.

On January 7, 2002, the DRC issued a report containing recommended findings of fact, conclusions of law, and decree of dissolution of marriage. First, the DRC held that Caner and Betty retained a life estate interest in the realty. He also found that the real property, including the marital residence, was a gift to Ronald from his parents and assigned the remainder inter-

---

1. This tract had been purchased by Caner and Betty Hunter in October 1981 for $90,000.

est in it to him as his nonmarital property. However, the DRC held that the improvements to the property by addition of the barn, garage, and outbuilding constituted marital property. He placed a current value on the realty of $110,000, with $93,000 being Ronald's nonmarital portion based on contributions from Caner and Betty Hunter, and $17,000 being marital property based on contributions from Cynthia and Ronald. The DRC valued the remainder interest in the improvements or enhanced value of the property at $8,000 and divided it equally with Cynthia and Ronald each receiving $4,000.

On January 11, 2002, Cynthia filed exceptions to the recommended divorce decree that, among other things, challenged the DRC's findings on the distribution and valuation of the real property. On the same day, January 11, 2002, the DRC entered a recommended addendum order "upon further reflection," granting Cynthia a $10,000 lump sum for maintenance.[2] On January 22, 2002, Ronald filed exceptions to the DRC's original recommended divorce decree and the addendum order. The circuit court held a hearing on the exceptions and rendered an order sustaining certain exceptions and amending the decree, but overruling a majority of the exceptions including those involving the real property and adopting the DRC's recommended judgment on that issue. This appeal followed.

■■■ We begin with a statement of our standard of review. Under CR[3] 52.01, in an action tried without a jury, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court." *See also Greater Cincinnati Marine Service, Inc. v. City of Ludlow*, Ky., 602 S.W.2d 427 (1980). A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly*, Ky., 976 S.W.2d 409, 414 (1998); *Uninsured Employers' Fund v. Garland*, Ky., 805 S.W.2d 116, 117 (1991). Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person. *Golightly*, 976 S.W.2d at 414; *Sherfey v. Sherfey*, Ky.App., 74 S.W.3d 777, 782 (2002). An appellate court, however, reviews legal issues *de novo. See, e.g., Carroll v. Meredith*, Ky. App., 59 S.W.3d 484, 489 (2001).

Cynthia contends the trial court erred in assigning Ronald the residential property as his nonmarital property, rather than characterizing it as marital property. More specifically, she challenges the court's finding that this property was a gift to Ronald alone.

■■■ Under KRS[4] 403.190, the trial court's division of property involves a three-step process: (1) characterizing each item of property as marital or nonmarital;[5] (2) assigning each party's nonmarital property to that party;[6] and (3) equitably dividing the marital property between the parties.[7] *See Travis v. Travis*, Ky., 59

---

**2.** It is not clear what precipitated this order because Cynthia did not raise this issue in her exceptions.

**3.** Kentucky Rules of Civil Procedure.

**4.** Kentucky Revised Statutes.

**5.** *See* KRS 403.190(2) and (3).

**6.** KRS 403.190(1).

**7.** KRS 403.190(1) (court to divide marital property "in just proportions considering all relevant factors").

S.W.3d 904, 909 (2001). Property acquired by either spouse subsequent to the marriage is presumed to be marital property, except for certain enumerated types including property acquired by gift. KRS 403.190(2). The party claiming property acquired after the marriage as his/her nonmarital property through the gift exception bears the burden of proof on that issue.[8] *Travis,* 59 S.W.3d at 912; *Adams v. Adams,* Ky.App., 565 S.W.2d 169 (1978).

Whether title is held individually or in some form of co-ownership, such as joint tenancy, tenancy in common, or tenancy by the entirety is not determinative in classifying property as marital or nonmarital. KRS 403.190(3). Factors relevant to determining whether particular property was a gift include the source of the money used to purchase the item, the intent of the donor, and the status of the marriage at the time of the transfer. *See, e.g., O'Neill v. O'Neill,* Ky.App., 600 S.W.2d 493 (1980). However, the intent of the purported donor is considered the primary factor in determining whether a transfer of property is a gift. *See, e.g., Underwood v. Underwood,* Ky.App., 836 S.W.2d 439, 442 (1992), *overruled in part on other grounds by Neidlinger v. Neidlinger,* Ky., 52 S.W.3d 513 (2001); *Clark v. Clark,* Ky.App., 782 S.W.2d 56, 63 (1990). Whether property is considered a gift for purposes of a divorce proceeding is a factual issue subject to the clearly erroneous standard of review. *See, e.g., Ghali v. Ghali,* Ky.App., 596 S.W.2d 31 (1980); *Adams, supra.*

In rendering its judgment, the trial court relied in part on *Angel v. Angel,* Ky.App., 562 S.W.2d 661 (1978). In *Angel,* the court held that a tract of land conveyed to the divorcing parties by the brother of the wife without any consideration was a gift that should have been treated as the wife's nonmarital property under KRS 403.190. *Id.* at 665. The court noted that under KRS 403.190(3), in assigning each spouse his or her separate property, record title is not controlling. *Id.* The court stated that the real property conveyed jointly to the married couple should be considered the wife's nonmarital property "unless the trial court finds that [the husband] was named as a grantee for a reason other than his marriage to [the wife]." *Id.*

Cynthia contends that the trial court improperly relied on *Angel.* She maintains that *Calloway v. Calloway,* Ky.App., 832 S.W.2d 890 (1992), is the controlling case. In *Calloway,* the husband's parents conveyed to the couple a parcel of real property valued at $10,000 on which the marital home was later built. The trial court classified the parcel as nonmarital property and awarded the husband $10,000 as his nonmarital interest in the lot. This court reversed the trial court's classification of the parcel as nonmarital property and stated as follows:

> KRS 403.190 does not directly address the nature of a gift from a third party to both spouses, and surprisingly, no Kentucky appellate court has had occasion to address the question. R. Petrilli, *Kentucky Family Law,* § 24.8, at 300

---

**8.** Several cases state that a party asserting a nonmarital interest in property by gift must present "clear and convincing evidence" to rebut the marital property presumption. The court in *Underwood v. Underwood,* Ky.App., 836 S.W.2d 439 (1992), provided an extensive discussion critical of imposing this higher standard, suggesting that the proper standard should be by a preponderance of the evidence. Although the court in *Travis* did not specifically decide this issue, its opinion indicates agreement with the analysis in the *Underwood* case that the preponderance of the evidence standard is the proper standard of proof necessary to rebut the presumption.

(1988). Based on the Kentucky legislature's clear intent that jointly owned property acquired during the marriage be divided upon dissolution in just proportions, we now hold that gifts during marriage from third parties to both spouses shall be treated as marital property upon dissolution. This holding, we believe, is a natural outgrowth of KRS 403.190, and is consistent with both the Uniform Marriage & Divorce Act and the limited number of decisions in other jurisdictions which have addressed the issue. *Forsythe v. Forsythe,* 558 S.W.2d 675 (Mo.App.1977).

*Id.* at 893.

We agree with the trial court that *Calloway* does not compel a different result. The court in *Calloway* was attempting to deal with various approaches to the interpretation of KRS 403.190(2) and (3) in that these provisions speak in terms of property acquired by "either" spouse, without specifically addressing property acquired by "both" spouses.[9] *Petrilli,* cited by the *Calloway* court, identified three possible approaches: (1) KRS 403.190 is inapplicable and property law would determine the interests of each, i.e., ownership based on the deed alone; (2) the presumption of KRS 403.190(2) applies but can be overcome by proof of gift and the document of title is irrelevant as expressed in KRS 403.190(3); and (3) the marital presump-

tion of KRS 403.190(2) is overcome by evidence of gift and it is considered nonmarital property with the respective interests determined by the documents and intent of the donor. *See, e.g., Grant v. Grant,* 424 A.2d 139 (Me.1981)(discussing two of the options). The language in *Calloway* suggests the court opted for the second approach in deciding the real property in that case should have been classified as marital property and divided according to the factors enunciated in KRS 403.190(1)(a)-(d). Unfortunately, application of *Calloway* is complicated by the lack of discussion of the operative facts related to the real property[10] and its conclusion that the property was "clearly" a gift to both parties. The court's statement that no Kentucky appellate court had addressed the issue is puzzling in light of the existence of the prior *Angel* decision.

The *Angel* court predicated its decision on a finding that KRS 403.190 was consistent with the prior restoration statutes that attempted to restore to the wife property deeded to a married couple jointly by the wife's relatives where the husband was included in the deed solely because of his marriage to the wife. While there appears to be some tension between *Angel* and *Calloway* as far as the evidentiary burdens associated with a conveyance to a married couple in that *Angel* places a burden on the claimant seeking to include the proper-

---

9. KRS 403.190 states in part:

 (2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

 (a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

 (3) All property acquired by either spouse after the marriage and before a decree of legal

separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

10. The bulk of the *Calloway* opinion involved a race car that had been transferred to the couple by the wife's mother and was used and maintained by the couple.

ty in the marital estate, whereas, *Calloway* places the burden on the party seeking nonmarital status of the property, KRS 403.190(3) evidences a legislative intent to eschew documentary title as conclusive.

Even if KRS 403.190(3) were construed to create a marital presumption, the interrelationship between subsection (3) and subsection (2)(a) indicates that the presumption can be rebutted by evidence of a gift intended for one spouse regardless of the documentary title. This is consistent with both *Calloway* and *Angel* and the source of funds rule underpinning both statutory and case law to determine marital and nonmarital interests in property. *See, e.g., Travis*, 59 S.W.3d at 909 n. 10 (describing the source of funds rule). As one noted commentator stated, "The *Calloway* rule is not different from the *Angel* rule since both attempt to effectuate the intent of the donor." Louise E. Graham and Hon. James E. Keller, 15 *Kentucky Practice: Domestic Relations Law,* § 15.18 at 521 (2d ed.1997). *See also Petrilli, supra* at § 24.8 (stating the presumption of marital property can be overcome, for instance, by proof that the gift was intended by the donor to be to one spouse, and the other spouse's name was placed on the document by the donor as a formality). In determining the intent of the donor, a court should look at all the circumstances such as statements of the donor, statements of the spouses, the tax treatment of the gift, whether the gift was jointly titled, the relationship of the parties, and the intended use of the property. *See,* Deborah H. Bell, *Equitable Distribution: Implementing the Marital Partnership Theory through the Dual Classification System,* 67 Miss. L.J. 115, 144 (1997).

In the current case, Caner and Betty Hunter testified that they intended to give the real property to their son, Ronald, and included Cynthia on the deed solely because of her marriage to him. Cynthia also admitted on cross-examination that she was unaware of any reason she was included on the deed other than her being married to Ronald. The deed itself stated as consideration for the conveyance, the love and affection of Ronald's parents for him. We believe the trial court's factual finding that the conveyance was a gift intended solely for Ronald was not clearly erroneous and was sufficient to overcome the marital property presumption.

Contrary to Cynthia's position, the fact that the current house was built with insurance proceeds does not alter our conclusion. The proceeds merely served to replace the value of the residence that was Ronald's existing nonmarital property. As the trial court held, only the increase in value of the property due to the joint efforts of the parties during the marriage constituted marital property.

 Cynthia also criticizes the DRC's valuation and division of the marital portion of the real property. The DRC valued the nonmarital portion at $93,000 and the marital portion, made up of the cost of the improvements consisting of the barn and garage, at $17,000 for a total value of $110,000. Ronald testified that the parties received $90,000 in insurance proceeds and then contributed an additional $7,000 to rebuild the house. However, there is no documentary evidence to support this testimony and Cynthia introduced the written contract to build the house at a cost of $87,000. In addition, Ronald testified he built the garage for $12,000 and the barn for $3,000. Cynthia testified the cost of the garage was between $12,000–$15,000, and she could not remember the cost of the barn.

It is unclear how the DRC derived his individual valuation figures for the real property and they appear to be clearly erroneous, but the errors are harmless.

Because the parties failed to provide any independent expert evidence on the fair market value of the real property and the DRC based the marital portion, or increased value in the property, solely on the improvements, any error in the valuation of the nonmarital portion would be irrelevant since it would belong to Ronald regardless of the amount. Also, the $17,000 figure actually exceeded the amounts attributed to the barn and garage by the parties, which benefited Cynthia because she received one-half of that figure. Thus, she has not shown that any error by the DRC and the trial court in valuing the real property adversely affected her.

■ Finally, Cynthia seeks reversal of the trial court's rulings on the appellees' exceptions to the DRC's recommended report. She argues that the court should not have considered the exceptions because they were untimely. The appellees filed their exceptions approximately 14 days after the DRC's initial recommended report was entered and the notice of entry was sent to the parties. In *Eiland v. Ferrell,* Ky., 937 S.W.2d 713 (1997), the court held that a trial court has discretion whether to consider objections or exceptions to a domestic relations commissioner's recommended report beyond the 10–day period set forth in CR 53.06(2).[11] *Id.* at 716–17. It indicated that parties are obligated to file objections to domestic relations commissioners' reports in order to preserve issues other than sufficiency of the evidence for appellate review. Nevertheless, "where it appears that untimely objections have been considered, no sound policy prevents appellate review." *Id.* at 717. Consequently, the trial court had discretion to consider appellees' exceptions even though they were untimely filed, and Cynthia is not entitled to reversal of the court's rul-

ings on those exceptions based on untimeliness.

For the foregoing reasons, we affirm the order of the Floyd Circuit Court.

ALL CONCUR.

---

11. CR 53.06(2) states that "[w]ithin 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties...."