RENDERED: APRIL 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0542-MR

PAMELA RENA BOONE (F/K/A
PAMELA RENA BALDWIN)                                        APPELLANT


                    APPEAL FROM LAUREL CIRCUIT COURT
v.          HONORABLE STEPHEN MICHAEL JONES, JUDGE
                    ACTION NO. 21-CI-00888


SAMUEL KEITH BALDWIN                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND McNEILL, JUDGES.

COMBS, JUDGE: Pamela Boone, formerly Baldwin, appeals from the order of

the Laurel Family Court supplementing its decree of dissolution of marriage.

Boone contends that the family court erred by adopting as its own the order

proposed by her former husband, Samuel Baldwin. She also contends that its

findings of fact and conclusions of law concerning the marital estate were clearly erroneous. After our review, we affirm.

Boone and Baldwin married in August 2008. They separated in September 2021, and Baldwin filed a petition for dissolution of the marriage in December. They do not have children in common, but Boone brought a son, Logan (now an adult), to the marriage.

At the time of their separation, the parties resided together at 89 Trosper Road in London, Kentucky. Baldwin inherited this real property upon the death of his brother. He also inherited the contents of the home, $37,400 in cash, and a motor vehicle. Baldwin used the cash proceeds to renovate the home.

Prior to moving to 89 Trosper Road, Baldwin and Boone lived together at 127 Trosper Road. Baldwin had owned this property (and the adjoining 2.5 acre lot) before the parties married.

During the parties' marriage, Baldwin (and his siblings) inherited additional real property. When the property sold, Baldwin received $266,000 as his share of the proceeds.

In October 2020, Boone left the marital residence. She took with her personal property, a car, and some household furnishings. Baldwin indicated that Boone refused to return to the marital residence unless he "put her name on the deeds" to his real property. Baldwin testified that Boone explained that she wanted

Logan to be provided for in the event of Baldwin's death and that probate could be avoided if the property were deeded properly. This testimony was supported by numerous text messages exchanged between the parties. Baldwin indicated that he did not intend to convey the property to Boone for any purpose other than to provide for Logan upon his (Baldwin's) death.

On March 21, 2021, Baldwin deeded the nonmarital properties to himself and Boone. Once the deeds were recorded, Boone returned to the marital home, but the marital relationship did not resume. Six months later, she left the marital residence for good.

On October 4, 2022, the family court entered a decree dissolving the parties' marriage while reserving decision on all other issues. Subsequently, the family court conducted a final hearing. Baldwin testified and traced his purchase of various items of personal property to the cash proceeds he received in exchange for his inheritance. Baldwin indicated that he used a portion of the funds to renovate the marital home and to satisfy a loan of $62,000. He purchased a boat, a lawn mower, a truck, a jeep, a four-wheeler, and a $7,500 mattress. He also gave a vehicle to Logan and paid off the remainder of Boone's car loan. Baldwin indicated that he still held more than $30,000 in cash. Following the hearing, the family court ordered the parties to submit memoranda or relevant legal authority as well as proposed orders concerning an equitable distribution of disputed property.

In its analysis, the family court found that the parties had "very little debt and, therefore, the main issue is what is non-marital and what property is marital and subject to division." It rejected Boone's contention that the real property inherited by Baldwin had been converted to marital property by virtue of the deeds recorded six months before the parties separated. The court explained in its order as follows:

> [Baldwin] claimed that his intent was not to convert the property to marital property but instead testified that he believed that the two survivorship deeds would only be effective at his death. He testified that he had never had a survivorship deed before as the only deed he ever had was in his name only. He was not familiar with deeds and their legal affect [*sic*]. He testified that he believed that [Boone] had planned to divorce him prior to the execution of the deeds and that [Boone] did not intend on staying in the marriage and was insistent on getting her name of [*sic*] the survivorship deeds for monetary gain. [Boone] left the marital home and separated from [Baldwin] within 6 months of her name being added to the deeds. [Baldwin] testified that she did not bring back all her property to the marital home when she did return and left certain items of furniture at her parents. [Baldwin] likewise testified that [Boone] had consulted with an attorney in the past prior to their separation and was aware that she would receive very little if the parties divorced due to [Baldwin's] non-marital interest in the property. Various text messages were introduced by [Baldwin] that were exchanged between the parties at the time the execution of the deeds was being discussed wherein the parties spoke of inheritance being the concern if something happened to [Baldwin]. . . . [Boone] referenced [Logan] during the texts as a reason for her name being on these deeds so that he would

inherit something.  She stated that [Logan] would not inherit anything otherwise.

On December 12, 2022, the court's final order was entered.  The family court restored the disputed real property to Baldwin as his separate, nonmarital property.  It also assigned to him as his nonmarital property various vehicles, the lawnmower, the boat, a massive gun collection, and $33,500 in cash.  The court distributed eight more guns to Baldwin as his share of the marital estate and ordered him to pay to Boone $4,000 for her interest in those guns.  A substantial portion of the marital property was distributed to Boone.  It consisted of the entirety of Boone's retirement and savings accounts, her bank account, a Toyota Camry, and all the personal property in her possession.  The court found that this distribution was an equitable division of the property.  Boone filed a motion to alter, amend, or vacate, which the court denied.  Boone then filed this appeal.

Boone argues first that the family court erred by failing to separate its findings of fact from its conclusions of law, alleging that it wholly adopted Baldwin's proposed order as its own.  She acknowledges that these issues were not preserved for our review, but she contends that we may consider them and afford her relief under the provisions of CR[1] 61.02.  We disagree.

---

[1] Kentucky Rules of Civil Procedure.

CR 61.02 provides that a palpable error which affects the substantial rights of a party may be considered on appeal even where it is not adequately preserved for our review.  However, relief can be granted only upon our determination that manifest injustice has resulted.  We perceive no manifest injustice under the facts and circumstances of this case which amply support the reasoning and conclusions of the family court.  Consequently, we decline to address these issues further.

Next, Boone states that the court erred by disregarding her evidence.  She challenges the court's order because "the court adopted findings heavily slanted in favor of [Baldwin]."

> Trial courts [resolving dissolution issues] are faced with the difficult task of weeding through emotionally-charged testimony and often slanted evidence to reach a fair and equitable result.  Because of this, trial courts are afforded broad discretion in dividing marital property and marital debt.

*Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018).

There is no indication that the family court *disregarded* Boone's evidence.  Instead, the court considered the testimony and documentary evidence, weighed its value (discounting Boone's testimony), and found relevant facts.  The order cannot be reversed on this basis.

Next, Boone argues that the family court erred by failing to divide the real property. She contends that the disputed property was a gift to the marital estate and that it was, therefore, subject to equitable distribution. We disagree.

KRS[2] 403.190 governs the division of property upon dissolution of a marriage. Pursuant to the provisions of KRS 403.190, a family court employs a three-step process to distribute the parties' property: the trial court first classifies each item of property as marital or nonmarital; the trial court then assigns any separate, nonmarital property to the party who owns it; and finally, the trial court equitably distributes the marital property to the parties. *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004). By statutory definition, property acquired before the marriage or by gift, bequest, devise, or descent during the marriage is not marital property; nor is property deemed marital if it is acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent. KRS 403.190.

In *Sexton*, 125 S.W.3d at 268-69, the Supreme Court of Kentucky addressed the legal elements applicable to cases involving gifts between spouses:

> [T]he Court of Appeals set forth four (4) factors that trial courts should consider in determining if a transfer was a gift and thus a spouse's nonmarital property: one, "the source of the money with which the 'gift' was purchased," two, "the intent of the donor at that time as to intended use of the property," three, "status of the

---

[2] Kentucky Revised Statutes.

marriage relationship at the time of the transfer," and four, "whether there was any valid agreement that the transferred property was to be excluded from the marital property." . . . Clearly, **the donor's intent is the primary factor** in determining whether a transfer of property is a gift, and we likewise hold that the donor's intent is also the primary factor in determining whether a gift is made jointly to spouses or individually to one spouse. The donor's testimony is highly relevant of the donor's intent; however, the intention of the donor may not only be "expressed in words, actions, or a combination thereof," but "may be inferred from the surrounding facts and circumstances, including the relationship of the parties[,]" as well as "the conduct of the parties[.]"

(footnotes and citations omitted) (emphasis added).

Whether property is classified as a gift in a divorce proceeding is a factual issue subject to the clearly erroneous standard of review. *Id.* A factual finding is not clearly erroneous if it is supported by substantial evidence. *Sewell v. Sweet*, 637 S.W.3d 330 (Ky. App. 2021). Substantial evidence is evidence that, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003). We review *de novo* a trial court's legal conclusions. *Ensor v. Ensor*, 431 S.W.3d 462 (Ky. App. 2013).

The family court had evidence before it which adequately supported a finding that the disputed real property was Baldwin's nonmarital property and that it retained this character even after the new deeds were recorded. There was

substantial evidence to indicate that Baldwin did not intend to convert the disputed real property into marital property or any part of it to Boone as her separate property. The family court did not abuse its discretion by making this finding, and its ultimate classification of the real property was correct as a matter of law.

Next, Boone contends that the family court erred by accepting Baldwin's evidence tracing his nonmarital funds to the boat, the four-wheeler, and the lawnmower. She argues that without canceled checks or other written documentation, Baldwin could not show that he used non-marital funds to purchase the disputed items. She claims that these items remained subject to equitable division as marital property. We disagree.

Baldwin's testimony and documentary evidence provided sufficient grounds for the family court to find that a portion of his nonmarital property had been exchanged for the disputed items of personal property. Consequently, they were properly assigned to him as his separate, nonmarital property.

Finally, Boone argues that the family court erred by omitting certain household goods and furnishings from its division of the marital property; namely, items that the parties agreed in writing would be exchanged between them. She also contends that a dining set, a grill, and a china cabinet were not addressed by the family court in its order. The family court ordered that "[e]ach party shall retain whatever personal property that is currently in their possession that is not

specifically addressed in this order." These issues were not included in the motion to alter, amend, or vacate filed by Boone. This order is clear on its face and does not merit relief.

Accordingly, we affirm the order of the Laurel Family Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Amanda L. Hill
Corbin, Kentucky

BRIEF FOR APPELLEE:

Kelly Kirby Ridings
London, Kentucky