RENDERED: JANUARY 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0065-MR

NIKKI LYN KRALLMAN                                                        APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE ACENA JOHNSON BECK, JUDGE
ACTION NO. 17-CI-00316

ESTATE OF GERALD THOMAS
KRALLMAN, BY AND THROUGH
CHARLES T. MOORE, EXECUTOR;
ELLIE LYN KRALLMAN, A MINOR;
JAKE THOMAS KRALLMAN, A
MINOR; AND THOMAS JAMES
KRALLMAN                                                                       APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND L. JONES,
JUDGES.

THOMPSON, CHIEF JUDGE: Nikki Lyn Krallman appeals from divorce decree

judgments regarding the division of assets. Ms. Krallman raises multiple issues on

appeal; however, only one requires reversal. The trial court made a factual error

when deciding the value of the marital home; therefore, we reverse and remand for reconsideration of that issue only.  For all other issues, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Krallman and Gerald Thomas Krallman were married on June 27, 2003, and the dissolution of marriage action was filed in February of 2017.  There are minor children of the marriage; however, there are no issues regarding custody before us.  This case was heavily litigated and culminated with five days of hearings that took place on February 8, 2023, February 24, 2023, May 3, 2023, May 5, 2023, and July 21, 2023.

On February 20, the trial court entered an order regarding shares of stock in a company owned by Mr. Krallman's father.  Ms. Krallman had argued that these shares had marital interest, but Mr. Krallman disagreed.  The order held that the stocks were nonmarital in nature.  In June of 2023, Mr. Krallman was diagnosed with terminal cancer.  On July 13, 2023, Mr. Krallman moved for a bifurcation of the proceedings and requested that the court enter a decree of dissolution and reserve all other issues regarding property and debts for later.  A decree of dissolution was entered on July 21, 2023, but all issues regarding marital property were reserved.  Mr. Krallman passed away on September 7, 2023.  The

trial court entered a final order regarding the outstanding property issues on December 13, 2023. This appeal followed.[1]

## ANALYSIS

Before we begin with an analysis of the merits of the case, we must first address the Estate's argument that Ms. Krallman's brief should be stricken because she did not follow the rules of appellate procedure. Kentucky Rules of Appellate Procedure (RAP) 32(A)(4) states that at the beginning of each argument, the appellant should disclose how the issue was preserved and cite to the preservation in the record. Ms. Krallman did not do so. RAP 10(B) allows us to strike a brief or even dismiss an appeal should the rules not be followed; however, such action is within our discretion. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).[2] In this case, in the "statement of the case" portion of her brief, Ms. Krallman does have citations to the record where objections were made and issues preserved. In addition, since she is primarily appealing a divorce decree judgment, it is simple enough for us to determine the preservation of the issues she raises on

---

[1] Ms. Krallman moved to substitute Mr. Krallman's estate as the real party in interest before the trial court entered its final judgment. The trial court did not do so. Ms. Krallman later made a motion before this Court to substitute the estate as the real party in interest. We have granted the motion in a separately entered order.

[2] This citation to *Hallis* discusses Kentucky Rules of Civil Procedure (CR) 76.12. CR 76.12 dealt with the requirements for appellate briefs and has since been deleted. RAP 32 now contains the brief requirements once found in CR 76.12. We believe cases dealing with CR 76.12 issues can be applied to cases dealing with RAP 32 issues.

appeal. We decline to sanction Ms. Krallman and we conclude the issues raised on appeal have been properly preserved.

Ms. Krallman's first argument on appeal is that the trial court erred when it bifurcated the case and entered a decree of dissolution before deciding all issues in the case. We find no error. Kentucky Revised Statutes (KRS) 22A.020(3) states, "there shall be no review by appeal or by writ of certiorari from that portion of a final judgment, order or decree of a Circuit Court dissolving a marriage." "Generally, a decree of dissolution of marriage is not subject to review before an appellate court of the Commonwealth." *Clements v. Harris*, 89 S.W.3d 403, 404 (Ky. 2002). This Court has no authority to review the portion of a judgment, order, or decree that dissolves a marriage. If we were to agree that bifurcation of the case was improper, we would have to vacate the dissolution altogether and hold that the marriage was not dissolved. Such an action is not allowed in this case.

Even if we could review this issue, we would still find no error. "[A] trial court has broad discretion in ruling on a motion to bifurcate. Such a decision will be overturned only if it constitutes an abuse of discretion, which is found where the decision is arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Calhoun v. Provence*, 395 S.W.3d 476, 481 (Ky. App. 2012), *overruled on other grounds by Travelers Indemnity Company v. Armstrong*, 565

-4-

S.W.3d 550 (Ky. 2018) (citations omitted). The Court in *Putnam v. Fanning*, 495 S.W.2d 175, 176 (Ky. 1973), held that a decree of dissolution could be entered prior to a final disposition of other marital issues. Additionally, considering Mr. Krallman had a terminal illness, bifurcating the case to grant a dissolution before entering a final judgment on the property issues was reasonable.

We now move into the primary issues on appeal. Those issues revolve around marital property and marital debt.

> [I]n dissolution of marriage actions, a trial court's division of the parties' property requires a three-step process: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties.

*Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001) (footnotes omitted). KRS 403.190 sets forth the factors a trial court is to consider when determining the division of property. KRS 403.190 states in relevant part:

> (1) In a proceeding for dissolution of the marriage or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

(2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is

presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

This Court then reviews the decisions of the trial court to determine if the property was apportioned according to marital or nonmarital status and in just proportions. "'Just proportions' does not mean that the property must be equally divided, but only that a consideration of the factors in KRS 403.190 has been made." *Muir v. Muir*, 406 S.W.3d 31, 36 (Ky. App. 2013). In addition, "[w]hether title is held individually or in some form of co-ownership, such as joint tenancy, tenancy in common, or tenancy by the entirety is not determinative in classifying property as marital or nonmarital." *Hunter v. Hunter*, 127 S.W.3d 656, 660 (Ky. App. 2003).

It has long been recognized that the reviewing court cannot disturb the findings of the trial court unless those findings are clearly erroneous. How property is divided is well within the sound discretion of the trial court. Without an abuse of discretion, the reviewing court should uphold the trial court's division of property. A family court has broad discretion with respect to testimony presented, and may choose to believe or disbelieve any part of it. It is also entitled to make its own decisions regarding the demeanor and truthfulness of witnesses, and a reviewing court is not permitted to substitute its judgment for that of the family court unless its findings are clearly erroneous.

*Muir*, 406 S.W.3d at 34 (citations omitted).

As with division of marital property, the trial court's decisions regarding division of marital debt is reviewed for abuse of discretion. Furthermore, there is no presumption that debts incurred during the marriage are marital. Rather, the party claiming that a debt is marital has the burden of proof. In making this determination, the trial court should consider receipt of benefits, the extent of participation, whether the debt was incurred to purchase assets designated as marital property, whether the debt was necessary to provide for the maintenance and support of the family, and any economic circumstances bearing on the parties' respective abilities to assume the indebtedness.

*Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014) (citations omitted).

Ms. Krallman's first claim concerns Mr. Krallman's nonmarital portion of their house. Mr. Krallman was awarded around $50,000 in nonmarital interest in the house because he bought it prior to marriage. That amount included the down payment and mortgage payments made before the marriage. After the parties married, Mr. Krallman executed a quitclaim deed which transferred ownership of the property into the names of both Mr. and Ms. Krallman jointly. Ms. Krallman argues that by giving her joint ownership of the property, he also relinquished any nonmarital interest in the property. In other words, she claims that this deed gifted her his nonmarital interest. Mr. Krallman testified that he did not intend to gift his nonmarital interest in the property to Ms. Krallman.

We agree with the trial court that Mr. Krallman had a nonmarital interest in the property. The money he expended on the house prior to marriage

-8-

was nonmarital. In addition, even though the property was jointly owned does not mean all interest in the property becomes marital. *Hunter*, 127 S.W.3d at 660. Finally,

> [f]actors relevant to determining whether particular property was a gift include the source of the money used to purchase the item, the intent of the donor, and the status of the marriage at the time of the transfer. However, the intent of the purported donor is considered the primary factor in determining whether a transfer of property is a gift.

*Id.* Here, the trial court was in the best position to judge the credibility of the witnesses and weigh the evidence presented. We believe the court's determination regarding Mr. Krallman's nonmarital interest in the property was proper.

Mr. Krallman was also awarded $5,000 for improvements he made to the house prior to marriage. During the trial, Mr. Krallman testified that he completely remodeled the house on his own and estimated that he spent around $10,000 to $12,000 doing so. He had no receipts to support his estimate. Ms. Krallman argues it was an abuse of discretion for the trial court to award Mr. Krallman $5,000 for these improvements because he could not provide evidence of his estimates.

We find no error as to this issue. The trial court found Mr. Krallman's testimony to be credible and awarded him a smaller amount than he estimated. Further, an appraiser of the home testified during trial that he could tell the home

-9-

had been extensively remodeled. The testimony of Mr. Krallman and the appraiser support the court's decision.

The next issue concerns a home equity line of credit debt that the trial court allocated to both parties. Ms. Krallman argues that, while the home equity line of credit was taken out during the marriage, the money from it was used primarily by Mr. Krallman after the separation. She claims he should be solely responsible for the debt. We again find no error. The trial court found that Mr. Krallman did utilize the funds from the loan after the parties separated, the funds were used for marital purposes. Mr. Krallman testified that the money went to bills, school tuition for the children, and to help with Ms. Krallman's expenses after the separation. The trial court's finding that the line of credit was used for marital purposes was based on substantial evidence and the division of the debt was not an abuse of discretion.

The final issue regarding the home, and the one in which we believe must be reversed, concerns the valuation of the home. Ms. Krallman had the home appraised twice by Tom McKee, a professional appraiser. In 2018, Mr. McKee appraised the home's value at $175,000. In 2022, Mr. McKee appraised it at $240,000. These were the only appraisal values entered into the record. The court valued the home at $207,500, which was an average of the two appraisals. The court's reasoning was that Mr. McKee had testified that this increase in value was

a 377% increase, and while the property most likely rose in value between 2018 and 2022, it had not risen in value by 377%.

This finding by the trial court is clearly erroneous. Mr. McKee's testimony was that the property had increased by 37%, not 377%. A 37% increase is correct based on our own calculations. Because the trial court's decision regarding the home's value was based on an incorrect percentage, we must reverse and remand for the court to reevaluate the home's value.

Ms. Krallman's next argument concerns Mr. Krallman's checking account. After the parties separated there were 41 deposits into Mr. Krallman's personal checking account from the years 2017 to 2022. Those amounts totaled around $80,000 and the deposits ranged from $100 to $15,982.32. Ms. Krallman claims these deposits were dissipated from the marital estate by Mr. Krallman and she was entitled to a share of these amounts.

> [A] party is free to dispose of his marital assets as he sees fit so long as such disposition is not fraudulent or intended to impair the other spouse's interest such that it may properly be classified as a dissipation of the marital estate. However, in determining a just distribution of the marital estate, it is proper for the trial court to consider whether one of the parties dissipated or wasted marital assets if the property is expended (1) during a period when there is a separation or dissolution impending, and (2) where there is a clear showing of intent to deprive one's spouse of his or her proportionate share of the marital property. Dissipation must be demonstrated by a preponderance of the evidence, and the family court's findings of fact are upheld if supported by substantial

-11-

> evidence. The family court acts as fact-finder and possesses the sole authority to assess the credibility of witnesses. If dissipation is found to have occurred, the court will deem the wrongfully dissipated assets to have been received by the offending party prior to the distribution. The equitable relief fashioned by the court must bear some relation to the evidence presented.

*Duffy v. Duffy*, 540 S.W.3d 821, 828-29 (Ky. App. 2018) (internal quotation marks and citations omitted). Mr. Krallman was questioned extensively about his finances and his bank account; however, there was no evidence that these funds were used improperly or hidden from her. There was no evidence of dissipation.

The next argument raised is in regard to stock owned by husband in Miter Masonry Contractors, Inc. Mr. Krallman's father, Thomas Krallman, is the sole owner of Miter Masonry and Mr. Krallman was the vice president. In 2012, during the marriage, Thomas gifted Mr. Krallman ten shares of Class A stock in the company. The Class A stock had monetary value, but no voting rights. There was also Class B stock which had no value, but did have voting rights. Thomas owned all the Class B stock. An agreement was signed that stated only Mr. Krallman or his direct descendants could be shareholders and own the stock. It specifically stated that a spouse could not be a shareholder. Thomas also testified that his intent was to give the stock only to Mr. Krallman. During the marriage, the value of the stock increased by around $80,000.

On February 8, 2023, the court held a hearing to determine the marital interest in these stocks. On February 20, 2023, the court entered an order holding that the stock was nonmarital as it was a gift to Mr. Krallman from his father and his father intended to exclude Ms. Krallman from the gift. The court also held that the increase in value was also nonmarital because Mr. Krallman's employment at the business did not directly increase the value of the business or the stock. The court believed that only Thomas increased the value of the business and stock because he owned all the voting stock and made all the business decisions.

At a later hearing in July of 2023, Ms. Krallman attempted to put on avowal testimony from an expert who would testify that Ms. Krallman's contributions to the marriage helped increase the value of the business and the business's stock because it allowed Mr. Krallman to work at the company. The trial court did not allow the expert to testify to this.

Ms. Krallman argues that the court erred in finding that the increase in the stock's value was nonmarital and erred in not allowing her expert to testify. We will first note that Ms. Krallman did not appeal the trial court's conclusion that the stock was a nonmarital asset; therefore, we will accept the court's judgment on that issue. Ms. Krallman cites to *Allison v. Allison*, 246 S.W.3d 898 (Ky. App. 2008), in support of her argument. In *Allison*, also a divorce case, John Allison was the sole owner of stock in a company and the primary operator of the

-13-

company. His wife, Vicki Allison, was a homemaker. The trial court in that case held that all the stock owned by Mr. Allison was acquired during the marriage; therefore, it was marital property and Ms. Allison was entitled to some of the value. The Court of Appeals ultimately reversed on this issue because there was some inconsistency in the trial court's ruling. The ruling indicated that some of the shares might have been a gift to Mr. Allison from his parents and may be nonmarital. The Court remanded to clarify the issue.

The Court went on to say that even if this portion of the stock was nonmarital, an increase in value of those stocks during the marriage may be marital. The Court stated that an increase in value of nonmarital property caused by the joint efforts of a married couple can result in the increase in value to be marital property. *Id.* at 906. The Court held that since Mr. Allison was the owner and primary operator of the business, then Ms. Allison's efforts in the home could have also contributed to an increase in value of the business and stock by allowing Mr. Allison to work. *Id.* at 905-07.

In the case at hand, the court held that only Mr. Krallman's father was responsible for any increase in value of the business and stock because he was the company's owner, owned all of the voting stock, and made all of the decisions for the company. In *Allison*, Mr. Allison was the primary operator of the business and owned all of the stock; however, in this case, Mr. Krallman was an employee, and

it was his father who was the owner and primary operator of the business. We believe substantial evidence is present to indicate that this case is distinguishable from *Allison*. We agree that any increase in value of Mr. Krallman's nonmarital stock was also nonmarital because it was not attributable directly to him. If the increase in value was not a result of Mr. Krallman's actions, then Ms. Krallman's contributions as a homemaker also did not lead to an increase in value.

As to the trial court not allowing Ms. Krallman's expert to testify about her contributions to the marriage increasing the stock's value, we find no error. There was substantial evidence showing Mr. Krallman's father was the person in control of the business and Mr. Krallman was an employee; therefore, there were no joint efforts on the part of Mr. and Ms. Krallman that led to the stock's increase in value. The testimony of the expert was unnecessary.

Ms. Krallman's next argument on appeal is that the trial court erred when it awarded Mr. Krallman all of the Fifth Third Bank and Intel stock as his nonmarital property. Ms. Krallman argues that this stock was purchased during the marriage and was purchased in both of their names; therefore, the stock should have been declared marital property and she should have received a share of the property.

Prior to the marriage, Mr. Krallman was gifted a mutual fund by his father. During the marriage, Mr. Krallman liquidated the fund, placed the money

in a savings account in both the parties' names, and then used that money to purchase Fifth Third Bank and Intel stock. The stock was also purchased in their joint names. The court found that since the mutual fund was nonmarital property, the funds received when the fund was sold was also nonmarital. The court further found that, while the money was placed in a joint savings account, there was no other money in that account. When Mr. Krallman later purchased stock with that money, the court believed that stock was nonmarital because the funds had been sufficiently traced back to the nonmarital mutual fund. Mr. Krallman also testified that he did not intend to gift any nonmarital portion of the stock to Ms. Krallman. The court considered this testimony and found it persuasive.

While there may have been evidence that the stock should have been marital property, there was also evidence that it was not. The trial court is in the best position to weigh the evidence and judge the credibility of the witnesses. *Muir*, 406 S.W.3d at 34. In addition, just because property was held in the names of both parties does not make it marital property. *Hunter*, 127 S.W.3d at 660. Finally, a donor's intent is the primary factor to consider when deciding whether something is a gift. *Id.* After considering all of these factors, we find no error. The source of the funds to purchase the stock was sufficiently traced to nonmarital funds and Mr. Krallman testified he did not intend to gift any portion of the stock to Ms. Krallman.

The final issue on appeal concerns Mr. Krallman's retirement account. Mr. Krallman had a 401(k) account through his employer. He contributed to the account prior to marriage and during it. The trial court ordered that the marital contributions to the account be split equally. Ms. Krallman argues that Mr. Krallman was unable to prove how much money was in the account prior to the marriage; therefore, the entire account should be deemed marital property and divided equally. While it is true that Mr. Krallman did not provide any financial statements regarding how much money was in the account prior to marriage, that information can be easily determined by the company holding the account. Any money put into the account, and any increase in those funds, prior to the June 27, 2003 marriage, are nonmarital. Any money put into the account, and any increase in those funds, after the marriage and until the date of the dissolution, are marital funds and are to be divided equally. This was a reasonable decision by the trial court.

## CONCLUSION

Based on the foregoing, we reverse on the issue of the valuation of the marital home due to an erroneous finding by the trial court, and remand for further consideration. All other issues are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Delana S. Sanders
Crescent Springs, Kentucky

BRIEF FOR APPELLEE ESTATE OF
GERALD THOMAS KRALLMAN,
BY AND THROUGH CHARLES T.
MOORE, EXECUTOR:

Jacqueline S. Sawyers
Justin D. Durstock
Fort Mitchell, Kentucky