**Richard D. BISSELL, Appellant**

v.

**Lori BAUMGARDNER, Appellee.**

No. 2006–CA–002574–ME.

Court of Appeals of Kentucky.

Aug. 24, 2007.

Richard D. Bissell, Herriman, UT, pro se.

Carl D. Devine, Micah E. Salsman, Lexington, KY, for appellee.

Before THOMPSON and WINE, Judges; HENRY,[1] Senior Judge.

*OPINION*

WINE, Judge.

Richard D. Bissell appeals from a November 13, 2006 order of the Fayette Circuit Court granting a Domestic Violence Order (DVO) to Lori Baumgardner and

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

also awarding temporary custody of the parties' child to her. Bissell contends that the trial judge should have recused himself due to bias, that the court's findings that domestic violence had occurred were not supported by substantial evidence, and that the court lacked personal and subject-matter jurisdiction to enter the DVO and the temporary custody award. We find no error on any of these points. However, we conclude that the DVO should clearly reflect that the temporary custody award was pursuant to the court's temporary emergency jurisdiction and was without prejudice to any custody proceeding in an appropriate jurisdiction. Hence, we affirm in part, reverse in part, and remand for entry of an amended DVO.

Bissell and Baumgardner were married in 2000. At the time of the marriage, Baumgardner had one child from a previous marriage. In late 2000, the parties had a child together, R.L.B. The family resided in Kentucky until 2005, when they moved to Utah.

On June 30, 2006, Baumgardner and the two children returned to Kentucky to visit her family. Several days later, Baumgardner told Bissell that neither she nor R.L.B. would be returning to Utah. Sometime thereafter, Bissell filed a dissolution action in Utah.

The current controversy stems from an incident which occurred on August 13, 2006. Several days earlier, Bissell picked up R.L.B. and took him to a family gathering in Ohio. He returned R.L.B. to Baumgardner on August 13. According to Baumgardner's petition:

[Bissell] came into my apartment while dropping off our son [R.L.B.]. He said he wants to shoot my whole family and he wants to shoot me "in the face." He

said if I don't agree to give him the amount of money he wants out of the house in UT he is going to hurt me. He said he does not make threats, he just does it. There is a history of severe verbal abuse toward me and the boys. There has also been past physical abuse toward my oldest son. . . .

On September 5, Baumgardner filed a domestic violence petition on behalf of herself and the two children. Based on the allegations in the *ex parte* petition, the circuit court granted an emergency protective order (EPO) restraining Bissell from further acts of domestic violence, from further contact with Baumgardner or the children, and from disposing of or damaging any property of the parties. The EPO also granted Baumgardner temporary custody of the children and directed Bissell to pay temporary child support.

The matter was scheduled for a hearing on September 19. Prior to the hearing, Bissell filed a motion to dismiss, asserting that Kentucky lacked jurisdiction over him and the subject matter. The parties appeared for the hearing before Judge Kim Bunnell. Judge Bunnell noted that Baumgardner was accompanied by her stepfather, former Fayette Circuit Judge Charles Tackett. Judge Bunnell stated on the record that, while she did not know Baumgardner, she knew and respected Judge Tackett. Based on this information, Bissell asked Judge Bunnell to recuse herself and requested appointment of a special judge. Judge Bunnell granted the motion to recuse. By agreement of the parties, the court extended the EPO to allow appointment of a special judge.

The matter was referred to the chief regional judge, who randomly assigned the case to Judge Timothy Philpot. Bissell filed a new motion to recuse Judge Philpot, arguing that the matter should be assigned to a judge from outside Fayette County.

In addition, Bissell asserted that, before his service on the bench, Judge Philpot had been a law partner with a close friend of Judge Tackett. In addition, Bissell also noted that Judge Tackett had contributed to Judge Philpot's judicial campaign. Bissell asserted that this prior relationship created an appearance of partiality requiring Judge Philpot to recuse himself. Judge Philpot denied the motion to recuse, explaining that he had never had any relationship with Judge Tackett outside of court, and that he had no knowledge as to whether Judge Tackett had contributed to his campaign.

The court, with the agreement of the parties, again extended the EPO until the scheduled evidentiary hearing on November 13, 2006. After hearing the testimony of both Baumgardner and Bissell, the trial court granted the DVO. The court found that there had been an act of domestic violence and that Baumgardner was fearful of imminent physical injury. The court ordered the parties to have no violent contact, but did not prohibit all contact. In addition, the court did not include R.L.B. or Baumgardner's other child within the scope of the DVO. The DVO includes the form language requiring Bissell to surrender any firearms and his concealed-carry license. The court also granted Baumgardner temporary custody of R.L.B., subject to later adjudication in the concurrent Utah divorce proceeding. Bissell now appeals from this order.

■ As an initial matter, Bissell contends that Judge Philpot was required to recuse himself. KRS 26A.015(2) requires recusal when a judge has "personal bias or prejudice concerning a party . . ." or "has knowledge of any other circumstances in which his impartiality might reasonably be questioned." KRS 26A.015(2)(a) and (e); *see* SCR 4.300, Canon 3C(1). "The burden of proof required for recusal of a trial

judge is an onerous one." *Stopher v. Commonwealth,* 57 S.W.3d 787, 794 (Ky.2001). "There must be a showing of facts 'of a character calculated seriously to impair the judge's impartiality and sway his judgment.'" *Id., citing Foster v. Commonwealth,* 348 S.W.2d 759, 760 (Ky.1961), *cert. denied,* 368 U.S. 993, 82 S.Ct. 613, 7 L.Ed.2d 530 (1962); *Johnson v. Ducobu,* 258 S.W.2d 509 (Ky.1953).

■ Bissell has failed to make any showing that Judge Philpot's impartiality might reasonably be questioned. "The mere belief that the judge will not afford a fair and impartial trial is not sufficient grounds for recusal." *Stopher,* 57 S.W.3d at 794–95, *citing Webb v. Commonwealth,* 904 S.W.2d 226 (Ky.1995). Likewise, the mere fact that Baumgardner is related by marriage to a long-retired Fayette Circuit Court judge is not a sufficient basis to require recusal of all Fayette County judges. Furthermore, a judge is not required to disqualify himself or herself based solely on an allegation that a litigant or counsel for a litigant has made a legal campaign contribution to the political campaign of the trial judge. *Dean v. Bondurant,* 193 S.W.3d 744, 748 (Ky.2006).

■ In addition, we find no basis for Bissell's allegation that Judge Philpot's conduct during the hearing demonstrated bias. Bissell first asserts that Judge Philpot unreasonably excluded the testimony of his expert witness. However, the trial court's adverse ruling, even if erroneous, does not provide a basis for finding bias. Moreover, the testimony of the psychologist who evaluated Bissell after the incident had only limited relevance to the issues before the court. Since Bissell does not appeal from the court's order excluding the testimony, we cannot find that the court's ruling was erroneous, much less that it demonstrated improper bias.

■ Finally, our review of the record discloses no evidence that Judge Philpot was biased against Bissell or that he prejudged the merits of the case. The first entry date on the DVO appears to be merely a clerical error. The court made its factual findings and entered the DVO after the evidentiary hearing on November 13, 2006. And upon reviewing the record, we find that the court's conduct of the evidentiary hearing was entirely appropriate. The court allowed both parties considerable latitude in cross-examination. While the court engaged in some independent questioning of Bissell, those questions were only to clarify certain aspects of his testimony and did not demonstrate any improper partiality against Bissell.

■ Moreover, the court's questions were entirely relevant to the issues raised in the petition. A court may enter a DVO "if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur...." KRS 403.750(1). The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim "was more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson,* 934 S.W.2d 276, 278 (Ky.1996).

■ The trial court noted this was a very close case and essentially came down to a credibility determination. Bissell focused heavily on Baumgardner's delay in seeking the EPO and the fact that there had been no previous allegations of domestic violence during the marriage. While these are relevant factors to assess the credibility of an allegation of domestic violence, they are not necessarily controlling. In the end, the court found Baumgardner to be more credible than Bissell. The trier of fact has the right to believe the evidence presented by one litigant in preference to another. The trier of fact

may believe any witness in whole or in part. The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness.

*Anderson,* 934 S.W.2d at 278 (internal citations omitted). Given the evidence presented, the trial court's credibility determination was not clearly erroneous. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003).

 Bissell primarily argues that the trial court lacked personal jurisdiction over him and subject-matter jurisdiction to enter the DVO. We disagree. The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in Kentucky at KRS 403.800 to 403.880, governs jurisdiction in determinations involving custody of a child. On the other hand, a Kentucky court has jurisdiction to enter an EPO or DVO to "[a]ny family member or member of an unmarried couple who is a resident of this state or has fled to this state to escape domestic violence and abuse...." KRS 403.725(1). Unlike the residency requirements to establish home-state jurisdiction under the UCCJEA, there is no minimum time period to establish residency for a protective order. *Spencer v. Spencer,* 191 S.W.3d 14, 17 (Ky.App.2006). Since Baumgardner had clearly reestablished her residency in Kentucky, the trial court had subject-matter jurisdiction to enter the DVO.

 We further find that Kentucky properly exercised personal jurisdiction over Bissell. Kentucky has adopted a three-prong test to determine personal jurisdiction. *See Wilson v. Case,* 85 S.W.3d 589 (Ky.2002).

The first prong of the test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state. The second prong considers whether the cause of action arises

from the alleged in-state activities. The final prong requires such connections to the state as to make jurisdiction reasonable.

*Id.* at 593, *citing Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc.,* 562 S.W.2d 99, 100 (Ky.App.1978). "Each of these three criteria represents a separate requirement, and jurisdiction will lie only where all three are satisfied." *Id., citing LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1303 (6th Cir.1989). *See also Spencer,* 191 S.W.3d at 16–17. In this case, Bissell made the alleged threat to Baumgardner in Kentucky, thus satisfying all three elements.

 However, the court's additional order awarding temporary custody of R.L.B. to Baumgardner does implicate the UCCJEA. The parties agree that R.L.B. resided in Utah for eleven months prior to returning to Kentucky. And at the time of the DVO hearing, R.L.B. had been in Kentucky for less than six months. Furthermore, there was a pending dissolution and custody proceeding in Utah. As a result, Utah remained the child's home state, KRS 403.800(7), and the custody determination was subject to the Utah courts. KRS 403.822(1)(a).

 But as noted above, the trial court's oral ruling indicates that its custody award was temporary and subject to later adjudication in the Utah proceeding. However, the trial court made this ruling orally; the written and entered DVO does not reflect these qualifiers. Nevertheless, Baumgardner also points out that Kentucky courts have temporary emergency jurisdiction under the UCCJEA "if the child is present in this state and ... it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."

KRS 403.828(1). Baumgardner argues that the court properly granted her temporary custody of R.L.B. given its finding that Bissell made threats of domestic violence against her.

We agree. Since the court found that Bissell's allegations of threats of domestic violence were substantiated, the court properly exercised temporary emergency jurisdiction to award temporary custody of R.L.B. to Baumgardner. Furthermore, the court's exercise of temporary emergency jurisdiction does not impinge upon the superior jurisdiction of the Utah courts to make the final custody jurisdiction. *See* KRS 403.824; Utah Code Ann. § 78–45c–202. But to avoid any possible confusion, the DVO should be amended to reflect that the Fayette Circuit Court made the temporary custody award pursuant to its temporary emergency jurisdiction.

Accordingly, the DVO entered by the Fayette Circuit Court on November 13, 2006, is affirmed in part, reversed in part and remanded for entry of an amended order as set forth in this opinion.

ALL CONCUR.