RENDERED: JANUARY 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1004-ME

S.M., A MINOR CHILD[1]                                                APPELLANT

|  |  |
|---|---|
| | APPEAL FROM OLDHAM CIRCUIT COURT |
| v. | HONORABLE DOREEN S. GOODWIN, JUDGE |
| | ACTION NO. 24-D-00051-001 |

STACY DRURY ON BEHALF OF
HER MINOR CHILD, M.D.; M.D., A
MINOR CHILD; AND SPENCER
DRURY, FATHER OF M.D.                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KAREM, AND LAMBERT, JUDGES.

KAREM, JUDGE: Appellant S.M. appeals from an Interpersonal Protection Order

("IPO") entered against him by the Oldham Circuit Court. After careful review,

we affirm the decision of the trial court.

---

[1] Kentucky Revised Statute ("KRS") 456.035 mandates that an interpersonal protective order petition filed on behalf of minor children is to be confidential. To comply with the statute, initials will be used to refer to the minor children.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal relates to an IPO entered by the Oldham Circuit Court between two minors who were previously in a dating relationship. Stacy Drury ("Petitioner's Mother") filed a petition for an IPO on behalf of her minor child, M.D. ("Petitioner"), against S.M. ("Respondent"), who was also a minor. Both parties were appointed Guardians *Ad Litem* to represent them in this matter.

Petitioner's Mother filed the petition on July 2, 2024, making the following allegations:

> Respondent appeared at daughter[']s place of employment for several hours. Whe[n] father picked daughter up after working [Respondent] then got into car with friends and followed father and daughter to their residence. Father dropped off daughter and told her to get in the house and lock the door. Respondent and friends th[e]n proceeded to chase father around the neighborhood. Police were then called.

The circuit court had initially scheduled a hearing on the petition for July 5, 2024. However, on July 5, 2024, the Respondent requested a continuance to prepare his defense and present witnesses to testify on his behalf, which the circuit court granted. The hearing was rescheduled for July 19, 2024.

On July 19, 2024, the circuit court held a two hour hearing. Cumulative testimony from the Petitioner's Mother, Petitioner's Father, Petitioner, Respondent, Petitioner's co-worker, and Respondent's friend provided details of the events that formed the basis of the petition. It is undisputed that Petitioner was

working on the evening of July 1, 2024, at Dairy Queen ("DQ"). It is further undisputed that, during the Petitioner's shift, Respondent came to the restaurant with two friends to eat and "hang out." They remained in the restaurant from 6 p.m. until 8:30 p.m. Respondent's presence upset Petitioner and she was extremely distraught by the time her father came to drive her home.

Petitioner testified that when she and her father were exiting the DQ parking lot, she witnessed Respondent in the passenger seat of a black Volkswagen which began to follow them. Petitioner, Petitioner's Father, Respondent, and Respondent's friend all testified to the events that unfolded when the two cars left the parking lot. No one disputed that the black Volkswagen chased the Petitioner and her father until they reached their home. However, there was conflicting testimony as to whether Respondent was in the Volkswagen.

At the conclusion of the hearing, the court issued an IPO against Respondent based on a finding that dating violence and abuse had occurred and may again occur in the future. The court stated the following at the conclusion of the hearing:

> Alright, the court is making a finding by a preponderance
> of the evidence that dating violence and abuse has
> occurred and may again occur based upon the testimony
> of the Petitioner minor that is the subject of the protective
> order.
>
> Um, quite frankly, [Respondent], I think you were not
> upfront and honest with the court, even your friend said

you went to her house and you said that you all did not. Um, that you were in that subdivision . . . um, and, I wrote it down, you said "never went to the Drury's home, we were just driving around LaGrange." Obviously, your friend said something different. Uh, whether you were in that car or another car, I don't believe that you were in his car, I believe that you were in the car with Tyler.

And, um, this is all based upon the history between the parties. I have no reason to believe that someone would come in and ask for a protective order, um, a year after a relationship's over if, if there wasn't some fear based upon prior conduct in the relationship, um, so, um, I am going to enter an order.

Um, you know, in any event, her parents were already aware that there was a sexual . . . that sex in some manner, shape, or form had occurred, um, and I believe that it was not consensual. And, um, what I'm putting in place is an order for two years because the two of you will be in high school together.

On the form granting the IPO, form AOC 275.3, the circuit court placed a checkmark in a box indicating "it was established, by a preponderance of the evidence, that an act(s) of . . . dating violence and abuse . . . has occurred and may again occur[.]" The court made no other written findings; however, the court also stated in the order that it was incorporating therein its oral findings made at the conclusion of the hearing.

The IPO would be effective for two (2) years and restrained the Respondent from committing further acts of violence, abuse, or threats of abuse; from any unauthorized contact with the Petitioner or any other person(s) protected

by the Order; and for the Respondent to remain at all times and places at least five hundred (500) feet away from the Petitioner's residence and place of employment. Additionally, the court ordered the parties' high school to accommodate the Petitioner and allow for the parties to continue to attend the same school. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

As a preliminary matter, we note that the Petitioner argues in her brief that a copy of the appeal paperwork was served to Petitioner via her counsel but not Petitioner's Mother, who filed the IPO petition on Petitioner's behalf. Therefore, the Petitioner argues that, because Petitioner's Mother was not directly served, we should dismiss the appeal.

The Kentucky Supreme Court has held that substantial compliance with the appellate rules regarding the service, form, and filing of documents "shall be found if a [guardian] *ad litem* is given adequate notice of an appeal from a termination of parental rights, notwithstanding that the notice of appeal failed to name the child or children." *M.A.B. v. Cabinet for Health and Family Services*, 635 S.W.3d 90, 93 (Ky. 2021). We believe that rationale exists in this case and decline to deny "access to an appellant's constitutional right to an appeal based entirely on a technicality" and "in light of the fact that a child's interests are fully

protected if their guardian *ad litem* is given notice of the appeal." *Id*. (footnote citation omitted). Accordingly, we hold that service of the notice of appeal upon the Petitioner's guardian *ad litem* was sufficient to substantially comply with the appellate service requirements.

### 1. Standard of Review

We review the circuit court's findings of fact under the "clearly erroneous" standard. *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021) (citation omitted); Kentucky Rules of Civil Procedure ("CR") 52.01. A finding of fact is clearly erroneous if it is not supported by substantial evidence of a probative value. *Id*. (citation omitted). We review issues of law *de novo*. *Id*. (citation omitted).

### 2. Discussion

Respondent argues on appeal that there was insufficient evidence for the circuit court to issue the IPO under KRS Chapter 456. The Kentucky General Assembly has extended domestic violence protection to include "dating relationships." KRS 456.010(1). Individuals in such relationships may file petitions for an IPO, provided that such person has been "(a) A victim of dating violence and abuse; (b) A victim of stalking; (c) A victim of sexual assault; or (d) An adult on behalf of a victim who is a minor otherwise qualifying for relief under this subsection." KRS 456.030(1)(a)-(d).

The ruling and review of a petition for an IPO is similar to those of domestic violence protective orders ("DVO"). *See Smith v. Doe*, 627 S.W.3d 903, 908 (Ky. 2021) ("It appears the purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes. *Compare* KRS 403.715 with KRS 456.020."). Following a hearing as provided under KRS 456.040, "if a court finds by a preponderance of the evidence that dating violence and abuse, sexual assault, or stalking has occurred and may again occur, the court may issue an [IPO][.]" KRS 456.060(1). Thus, there are two prongs the court must find before granting a motion for a protective order: 1) that dating violence and abuse, sexual assault, or stalking has occurred, and; 2) that it may again occur.

As discussed by a panel of this Court, evidence meets the preponderance of the evidence standard "when sufficient evidence establishes the alleged victim was more likely than not to have been a victim" of dating violence and abuse, sexual assault, or stalking. *Dunn v. Thacker*, 546 S.W.3d 576, 580 (Ky. App. 2018) (citation omitted) (applying the preponderance of the evidence standard in the context of issuance of a domestic violence order ("DVO")). In this case, the circuit court determined that the first prong of the analysis had been satisfied finding the Petitioner had been a victim of "dating violence and abuse," which is defined in KRS 456.010(2) as:

> Physical injury, serious physical injury, stalking, sexual
> assault, strangulation, or the . . . fear of imminent

-7-

physical injury, serious physical injury, sexual abuse, strangulation, or assault occurring between persons who are or have been in a dating relationship.

During the hearing, Petitioner testified regarding a past incident of non-consensual sex with Respondent during their dating relationship. Petitioner also indicated that, due to her history with Respondent, she was scared during an incident at DQ when she was working, and Respondent came to eat and hang out with friends. Although Respondent never spoke to Petitioner while he was there or otherwise attempted to make contact, Petitioner stated she was in fear while he was there because she did not know what Respondent was going to do. In turn, Respondent denied that he had ever committed an act of dating violence and abuse against Petitioner, testifying that the sexual encounters had been consensual and that Petitioner's fear at Dairy Queen was unreasonable and irrational.

Here, the court found Petitioner's testimony to be more persuasive. Specifically, the court discussed at the end of the hearing "that sex in some manner, shape, or form had occurred" and that the trial court "believe[d] that it was not consensual" from the Petitioner's testimony. In the context of DVOs, "KRS 403.740 only requires a court determine whether domestic violence has occurred at some point in the past." *Walker v. Walker*, 520 S.W.3d 390, 392 (Ky. App. 2017) (citation omitted). Using the clearly erroneous standard, we conclude Petitioner's testimony concerning the alleged sexual assault constituted substantial evidence to

support the court's finding that Petitioner was more likely than not a victim of dating violence and abuse perpetrated by Respondent.

Next, we must address the second prong of KRS 456.060(1), which requires a finding from a preponderance of the evidence that an act of dating violence and abuse "may again occur" in the future. Regarding proof in the context of a DVO that domestic violence may again occur as required by KRS 403.740(1), the Kentucky Supreme Court has observed that "[t]he predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015).

The testimony of both the Petitioner and Respondent confirmed that their relationship began at the beginning of their freshman year in high school in the fall of 2022 and ended in the spring of 2023. The Petitioner testified that during the relationship, Respondent was controlling and threatening. Additionally, she testified that all the sexual acts that the couple engaged in were non-consensual. It was upon the discovery of the couple's sexual activity that the parents stepped in and agreed the children should no longer date or even be around each other. Petitioner's parents specifically instructed the Respondent to stay away from the Petitioner. The Petitioner further stated that once the couple broke up, she blocked the Respondent's phone number, and she blocked him on social media

in an effort to ensure he could not contact her.  However, she did in fact receive one text, from an unknown number, including a picture of Respondent with another girl.  Additionally, one time in January of 2024, Respondent reached out asking Petitioner to resume their relationship.  She did not respond.  Then, approximately seven months later, on July 1, 2024, the car chase that formed the basis of the petition took place.  Notably, there was conflicting testimony as to whether Respondent was in the Volkswagen, a third vehicle also involved in this chase, or not in either.  In addressing this discrepancy in her oral findings, noting that Respondent's testimony contradicted that of his own witness, the court stated Respondent was not believable.

The question before this Court is whether the trial court was clearly erroneous or abused her discretion in finding that, based on the evidence she heard, dating violence or abuse may occur again.

> In its role as factfinder, the trial court may necessarily have to consider the credibility of each witness. *Bissell v. Baumgardner*, 236 S.W.3d 24, 29 (Ky. App. 2007). The "trier of fact has the right to believe the evidence presented by one litigant in preference to another. . . [and] may believe any witness in whole or in part.  The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness." *Id.* at 29-30 (citation omitted).  On appeal, we are mindful of the trial court's opportunity to assess the credibility of each witness, and as such, we would only alter the court's findings if they were clearly erroneous. CR 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986).

*Sewell v. Sweet*, 637 S.W.3d 330, 335 (Ky. App. 2021).

Having carefully reviewed the record and the hearing, we conclude there was sufficient evidence for the trial court to conclude dating violence may occur again, thus meeting the second prong of the analysis.

We need not address the Respondent's remaining arguments, as our decision to affirm the trial court's finding that dating violence occurred and may occur again, renders those issues moot.

## <u>CONCLUSION</u>

Accordingly, we affirm the Oldham Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Alecia Lococo
Goshen, Kentucky

BRIEF FOR APPELLEE M.D., A MINOR CHILD:

Erin S. Kennedy Startzman
Louisville, Kentucky