RENDERED:  OCTOBER 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0508-ME

DONTAE TENNYSON                                             APPELLANT


APPEAL FROM JEFFERSON FAMILY COURT
v.        HONORABLE CHRISTINE WARD, JUDGE
ACTION NO. 21-D-500834-003


JASMINE NORTHINGTON                                         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Dontae Tennyson ("Dontae" or "Appellant") appeals from the order of Jefferson Family Court, wherein it issued an Interpersonal Protective Order ("IPO") against him.  Upon review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2025, Jasmine Northington ("Jasmine" or "Appellee") filed a petition for a Temporary Interpersonal Protective Order ("TIPO") against

her cousin Dontae. Based on the contents of the Petition the TIPO was granted, and the case was set for an evidentiary hearing on February 13, 2025. Generally, the allegations arose from an event wherein Dontae was alleged to have put his hands on Jasmine when she was pregnant in March of 2024, a confrontation at a family meeting in February of 2025, and various threats made over time by Dontae to Jasmine.

On February 13, 2025, the family court began the hearing at approximately 9:30 a.m. Dontae was represented by counsel, and Jasmine appeared *pro se*. Following a half hour of testimony, the family court took a break to allow the parties to discuss the case outside in the hallway and to allow the court to take care of a case in which an interpreter was needed. When court resumed at 11 a.m., the judge announced she had been advised that the parties had agreed to continue the case. The court asked if that was correct. Only Jasmine can be heard responding "yes," however, no objection was made by Dontae, and the hearing was continued to March 6, 2025.

On March 6, 2025, once the parties were settled in the courtroom, ready to continue the hearing, Dontae's counsel moved for a continuance due to a conflict with her schedule. Additionally, Jasmine alleged Dontae had violated the TIPO. Accordingly, the family court continued the hearing to March 27, 2025, and explained the process by which Jasmine could ask for Dontae to be held in

contempt. The parties were instructed to exchange any evidence, including video evidence, by March 17, 2025.

On March 27, 2025, both parties were present for the evidentiary hearing. The family court noted that on March 10, 2025, Jasmine had filed a motion to hold Dontae in contempt for violating the TIPO. Dontae's counsel, although stating she had never received the motion, agreed to proceed with the hearing and allow the court to hear evidence for both the original petition and the motion for contempt.[1]

The hearing lasted approximately an hour, and both Jasmine and Dontae testified, as did Jasmine's mother. Thereafter, the family court entered a three (3)-year Interpersonal Protective Order ("IPO") against Dontae. This appeal followed.

We will discuss other facts as they become relevant.

## PRELIMINARY ISSUES

Before we begin an analysis of the arguments in this case, it must be noted that both parties are guilty of violating the rules governing the submission of appellate briefs. "Procedural rules 'do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be

---

[1] A review of the record revealed no resolution to the Motion for Contempt.

disdained or denigrated.' *Louisville and Jefferson County Metropolitan Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007) (quoting *Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977))." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

## 1. No Appellee Brief Filed

We first note that Jasmine did not file an appellee brief in this case. Subject to exceptions which do not apply here, the filing of a brief by appellants and appellees is mandatory. Kentucky Rule of Appellate Procedure ("RAP") 30. Our options when an appellee brief is not filed include: "(a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." RAP 31(H)(3). "The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007) (citations omitted). In an appeal such as this, which concerns allegations of a violent nature and the court's imposition of an IPO against an individual, we decline to reverse the judgment without an independent review of the record and consideration of the merits of the case.

## 2. **Violations of RAP 32(A)(4) by Appellant**

While Dontae did file a brief as required, he failed to follow the rules governing the organizational contents of an appellant's brief. Relevant to the case at bar, RAP 32(A)(4) requires:

> An **argument** conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

The appellant in the case *sub judice* falls far short of adhering to this rule.

First, in relation to the requirement of a preservation statement, Dontae makes two arguments on which he bases his appeal, and neither is predicated by a preservation statement. The only statement that even resembles an attempt to apply this part of the rule appears in the "Statement of the Case" which reads, "[t]his case was preserved for appeal based on the contested hearing that took place on February 13, 2025, and was continued on March 27, 2025."[2] This statement is inadequate to meet the mandate of the rule. We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard

---

[2] Notably, there were no citations to the record to support this statement.

of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

However, in the case *sub judice*, the record is small, and thus, we were able to review the case without much effort. Unfortunately, after watching each of the recorded court appearances of the parties, it is clear Dontae *did not* properly preserve any objection. Nevertheless, "even if improperly preserved, this Court has authority to review alleged errors not preserved at trial under CR 61.02 upon a determination that manifest injustice has resulted from the error. It is a rule rarely applied and only if the alleged error affects the substantial rights of the parties." *Mo-Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 907 (Ky. App. 2015) (internal quotation marks and citations omitted).

In addition to the requirement that appellants must make a preservation statement at the beginning of each argument, RAP 32(A)(4) also mandates an argument must have "ample references to the specific location in the record." RAP 32(A)(4). Appellant, in the case *sub judice* makes two arguments supporting his appeal. Those arguments are contained within fourteen pages of Dontae's brief. In those fourteen pages Dontae cites to the record a mere five times; once in the first argument; and four times in the second argument. This failure on the part of Dontae is puzzling to the Court. Clearly, counsel obtained

and thoroughly reviewed the video record as he cites to it eighty-nine times in his "Statement of the Case." However, while appreciated, these citations in no way aide the Court in its analysis of his arguments.

Thus, noting Dontae's violations of RAP 32(A)(4) of both failing to make any preservation statement and failing to adequately cite to the record, we will review for manifest injustice only. *See Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990). "[T]he required showing is probability of a different result or error so fundamental as to threaten a [party's] entitlement to due process of law." *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006) (internal quotation marks omitted)).

## ANALYSIS

### 1. Denial of an Opportunity for a Meaningful, Full, and Fair Hearing

Dontae's allegation that he was disallowed a full and fair hearing boils down to three specific grievances. First, Dontae maintains his constitutional right to due process was denied when the family court ended its first hearing after an hour (although the court continued the case to another date for completion of testimony) and when the family court interrupted his testimony during the final hearing. Second, he claims he should have been allowed to testify that he lived with his father and was his father's caretaker. Lastly, Dontae believes the family

court should have allowed him to play the fifteen-minute audio recording of what transpired during a family meeting. We will review each of these in turn.

Sprinkled throughout Dontae's first argument are statements, without citations, of instances wherein he alleges the judge denied him the opportunity to fully testify. In fact, Dontae goes so far as to say "[t]he Trial Court made it very apparent at the first hearing on February 13, 2025, that it did not have the time or patience for a full evidentiary hearing." Specifically, Dontae alleges "the Trial Court stopped Mr. Tennyson mid-testimony and asked to recall the case." This is, at best, a misstatement of the events as they transpired during the hearing.

A review of the video recording of the initial hearing on February 13, 2025, revealed that, following the swearing of the parties, the family court listened to testimony from Jasmine first and then Dontae. During Dontae's testimony, approximately thirty minutes into the hearing, he became distraught and stated, "I am sorry. I can't talk right now. I am so . . . ," trailing off and not completing his thought. It was at that point that the family court, concerned for Dontae, said, "if you all need to take a break," she could recall the case following another case which required an interpreter, to which Dontae's counsel responded, "that's fine." The parties left the courtroom to discuss the case in the hallway while the judge called other cases.

The actual events that transpired in the courtroom stand in stark contrast to the callousness alleged by Dontae. In fact, we would go as far as to say that Dontae blatantly misrepresented the situation. Clearly, the family court did not stop Dontae mid-sentence. Moreover, at 11 a.m. when the family court recalled the case, bringing the parties back into the courtroom, the judge announced she had been advised that *the parties had agreed to continue the case*. The court asked if that was correct. Only Jasmine can be heard responding "yes," however, no objection was made by Dontae, and the hearing was continued to March 6, 2025. The allegations that the family court did not have the time or the patience to hold a full hearing are unfounded, and we find no manifest injustice.

Dontae alleges similar impatience by the family court in the second hearing, noting, again without citations to the record, that the family court interrupted him and was not paying attention to his testimony. However, Dontae himself states in his brief that "[a]dmittedly, both parties struggled to testify concisely throughout the hearing." It is a family court's job, especially as the finder of fact, to move the case along in a judicious manner. The record reflects that the family court was simply keeping the litigants' testimony narrowed to facts which were relevant to the case. Contrary to the allegations of Dontae, she showed no sign of impatience or intolerance. There is no proof of manifest injustice.

As to Dontae's second grievance with the court, he maintains that he should have been allowed to present evidence that he lived with his father and that he was the primary caretaker of his father, for whom Jasmine is the guardian.[3] He believes that proof of this relationship would have aided in his defense against the allegations of stalking. However, Dontae did in fact testify regarding both his living arrangements and his role as caretaker. He contended that he lived in the house with his father and gave him his medication each morning. We find no manifest injustice.

Lastly, Dontae claims the "Trial Court unreasonably and capriciously denied [Dontae] the right to present the audio evidence." In reality, both parties *stipulated* to the contents of the audio recording. And there was no objection to the manner in which the family court handled this evidence by either party. Moreover, Dontae's counsel stated, "well, I guess I can just ask him what he meant by what he said." We find no fault in the family court's rulings.

## 2. Insufficient Facts to Support Findings of Stalking

In granting the IPO for Jasmine, the family court made the finding that stalking had occurred and may occur again. However, Dontae argues there were insufficient facts to warrant the family court's findings. We reiterate that due

---

[3] The legal relationship between Dontae and the gentleman identified as Jasmine's grandfather was never fully established. Dontae called the gentleman "Daddy" and stated that he had been raised by him and his wife who was now deceased.

to the insufficiencies of Appellant's brief, we review for manifest injustice only. However, even should we use the usual standard of review, we conclude that there was substantial evidence to support the family court's findings.[4]

Turning to the applicable law in this case, under KRS[5] 456.060(1), "[f]ollowing a hearing . . . if a court finds by a preponderance of the evidence that . . . stalking has occurred and may again occur, the court may issue an interpersonal protective order[.]" Therefore, pursuant to the statutory language, a family court must make two separate findings: that stalking has occurred, as well as the likelihood of future domestic violence. *Id.*

---

[4] Were we to use the regular standard of review in the case *sub judice*,

> [t]he family court's findings of fact will only be disturbed if clearly erroneous. CR 52.01; *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982). A finding of fact is clearly erroneous if it is not supported by substantial evidence. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citations omitted). We review questions of law *de novo. Id.*
> In our review of an IPO, "the test is not whether we would have decided it differently, but whether the findings of the [family] judge were clearly erroneous or that he abused his discretion." *Cherry*, 634 S.W.2d at 425 (citation omitted). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Castle v. Castle*, 567 S.W.3d 908, 915 (Ky. App. 2019) (citation omitted). "[W]e give much deference to a decision by the family court, but we cannot countenance actions that are arbitrary, capricious or unreasonable." *Id.* at 916 (citation omitted).

*Sewell v. Sweet*, 637 S.W.3d 330, 334 (Ky. App. 2021) (footnote omitted).

[5] Kentucky Revised Statutes.

KRS 456.010(8) incorporates the definition of "stalking" as set forth in KRS 508.140 or 508.150. As applied to the current case, the family court must consider whether the elements of second-degree stalking pursuant to KRS 508.150(1) were met:

> A person is guilty of stalking in the second degree when he intentionally:
>
> (a) Stalks another person; and
>
> (b) Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:
>
>> 1. Sexual contact as defined in KRS 510.010;
>>
>> 2. Physical injury; or
>>
>> 3. Death.

KRS 508.130 defines the term "stalk" as follows:

> (1)(a) To "stalk" means to engage in an intentional course of conduct:
>
>> 1. Directed at a specific person or persons;
>>
>> 2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and
>>
>> 3. Which serves no legitimate purpose.
>
> (b) The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

(2) "Course of conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose.

In granting the IPO, the family court concluded that Dontae's actions as described in the petition met the definition of "stalk" as defined by KRS 508.130. Specifically, the family court made findings that on February 3, 2025, Dontae threatened Jasmine during the family meeting, stating, "bring your ass outside" and "I'm going to show you." The family court further found that in March of 2024, when Jasmine was pregnant, Dontae grabbed her by the neck and threatened to break her jaw. In addition, Jasmine testified she moved out of her grandfather's home in June of 2024 because she had been threatened. Moreover, Jasmine's mother testified to witnessing these incidents as well. And although Dontae testified differently, the family court, in its role as fact finder, determines the credibility of the witnesses. *Bissell v. Baumgardner*, 236 S.W.3d 24, 29 (Ky. App. 2007). The "trier of fact has the right to believe the evidence presented by one litigant in preference to another . . . [and] may believe any witness in whole or in part. The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness." *Id.* at 29-30. In the case at bar the family court specifically acknowledged that it found Jasmine more credible.

We find no error with the family court's finding that Dontae stalked Jasmine. Clearly, more than one event was alleged and they transpired over a

period of more than a year.  It was not manifest injustice for the trial court to grant the IPO on the basis that stalking occurred and was likely to reoccur.

## **CONCLUSION**

Based on the foregoing, we affirm the Jefferson Family Court's IPO against Dontae.

ALL CONCUR.

| BRIEF FOR APPELLANT: | NO BRIEF FOR APPELLEE. |
|---|---|
| Adriana L. Roach<br>Louisville, Kentucky | |