RENDERED:  MAY 1, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1094-ME

SHERDENA ROCKY ALI                                             APPELLANT


APPEAL FROM CHRISTIAN CIRCUIT COURT
v.          HONORABLE JASON S. FLEMING, JUDGE
CASE NO. 25-D-00106-003


CARLOS EFRE IDIOKITAS;
C.I., A MINOR CHILD;
N.I., A MINOR CHILD; AND
A.S., A MINOR CHILD                                             APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND KAREM, JUDGES.

KAREM, JUDGE:  Sherdena Rocky Ali appeals *pro se* from the Christian Family

Court's denial of her third attempt to petition the court for a protective order

against Carlos Idiokitas.  The family court held that there was insufficient evidence

of a threat of sexual contact, serious physical injury, or death to grant the interpersonal protective order ("IPO").  Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sherdena and Carlos were in a relationship for five years, and they have two minor children, N.I. and C.I., but never married.  Sherdena has a third, older child, A.S., from a previous relationship.  Sherdena formally ended the relationship with Carlos in early March 2025.  They are litigating an ongoing custody and timesharing dispute over their children in a separate case, Action No. 24-CI-01141, also before the Christian Family Court.

On July 25, 2025, Sherdena filed a petition for an IPO[1] against Carlos for stalking and harassment.  It alleged that Carlos; his wife, Surlita Idiokitas; his girlfriend, Damesha Graham; and his three adult children had engaged in ongoing stalking, harassment, psychological abuse, and coercive control.  Sherdena claimed that Carlos allowed these individuals to harass and control her by interfering with her communication with her children and speaking negatively about her in front of the children.  She has filed numerous restraining orders against Carlos, as well as his wife and adult children.  Someone at the county attorney's office told her it was

---

[1] Because Sherdena and Carlos have two children in common, Sherdena could have sought a domestic violence order (DVO) under Kentucky Revised Statutes (KRS) 403.750(1) as a member of an unmarried couple, which is defined as "each member of an unmarried couple which allegedly has a child in common[.]"  KRS 403.720(6).  *See Smith v. Doe*, 627 S.W.3d 903, 909-10 (Ky. 2021) (discussing the distinction between IPOs and DVOs).

a family court matter. She alleges that the failure of the court and county attorney to act has empowered Carlos and his network to continue intimidating and harassing her without consequences.

It must first be noted that Sherdena filed two previous petitions for protective orders against Carlos, Action Nos. 25-D-00106-001 and 25-D-00106-002, dated April 16, 2025, and June 11, 2025, respectively. Both petitions were denied as failing to state an act or threat of domestic violence and abuse. The petition *sub judice* incorporated some if not all allegations in those petitions, as well as new allegations dated after June 11, 2025.

The oldest and most concerning of the incidents between Sherdena and Carlos took place in October 2021. On that occasion, Sherdena broke into the home of Carlos and his wife, Surlita. Carlos strangled Sherdena, pressed his foot on her neck, pushed her into her car, and drove off in the car with Sherdena in it. He was charged by the military with having extramarital sexual conduct with Sherdena, who was employed as an Army staff sergeant, and with assault consummated by battery. He faced a reduction in grade for misconduct immediately preceding his retirement.

Other allegations which predated the second petition include interactions with Carlos in 2025 dated: March 10th, 12th, 17th, 19th, and 28th; April 8th and 11th; and May 11th and 13th. These included incidents wherein

-3-

Carlos came to Sherdena's residence unannounced and uninvited, including times when no one was home. One specific incident involved Sherdena's new puppy which Carlos had offered to help train at his home. He later sent her a message at 6:30 a.m. that he was on his way to drop off the dog which he subsequently left on her porch. Sherdena didn't read the message until she woke up at 8:30 a.m. The dog had been on the porch in the cold for almost 2 hours unattended.

Another incident transpired when Sherdena and the kids were on vacation. She sent Carlos pictures of the children on April 1st and 2nd. On April 3rd, he texted "Good night my loves." She did not respond. He FaceTimed the children's iPad and repeatedly called for her to come to the screen. He claimed it was because he wanted to inform her of a flood near her home. Sherdena asked why he was at her home and viewed this as an invasion of boundaries. Apparently, the flood did cause problems because, when they returned home, she and the children had to stay at a hotel due to the flood and power outages. Carlos asked for the hotel address so he could take their daughter to a previously scheduled event, but did not go ahead because of the weather conditions. He later visited the hotel uninvited to bring her mail, even though she had told him she would retrieve it later herself.

New allegations which transpired following the denial of her second petition, include an incident during a custody exchange in June 2025. Allegedly,

Carlos became belligerent and aggressive when Sherdena asked him if he had been drinking. She suspected he may have been intoxicated. During a custody exchange on July 11, 2025, she alleges she was harassed and placed in direct physical danger by Carlos's girlfriend, Damesha Graham, who was driving the vehicle with Carlos and the children. Sherdena asked her if she would be caring for the children while Carlos was at work, and Damesha replied yes. The two women began arguing over Sherdena recording the exchange. Damesha accused her of harassment. Sherdena remained standing beside the vehicle, and Carlos instructed Damesha to drive off. She did, causing Sherdena to have to step back to avoid being hit.

Sherdena alleged that Carlos had accused her of harassment in response to her requests for information and return of clothing, and recording custody exchanges for safety. She believed he had orchestrated an effort to have his wife, girlfriend, and adult child testify falsely against her during custody proceedings.

The petition alleged that Carlos's conduct caused her severe emotional distress and that she suffers fear of retaliation through the court system. She also requested the court to restrain third parties from acting on his behalf, specifically his wife, his girlfriend, and his adult children.

The court conducted a hearing on August 14, 2025. It addressed the petition for an IPO in Action No. 25-D-00106-003. It also addressed motions Sherdena had brought in the custody case, Action No. 24-CI-01141, to hold Carlos in contempt and to modify custody. Neither Carlos nor Sherdena were represented by counsel at the hearing. Sherdena testified for over an hour about the allegations in her IPO petition and other allegations against Carlos, his wife, his girlfriend, and his family members relating to child custody, timesharing, and other issues.

The trial court entered an order denying the petition for an IPO, stating in pertinent part as follows:

> As to 25-D-00106-003 [the IPO case], *Kummer v. Valla*, 2018-CA-1333-ME (Ky. App. 2019) and *Taylor v. Fitzpatrick*, 2019-CA-1238-ME (Ky. App. 2020) requires there be a course of conduct to be stalking and it must meet the stalking definition for criminal stalking which it does not come close. The allegations do not include an implicit or explicit threat of sexual contact, serious physical injury or death. Therefore, the stalking IPO is denied. This case is dismissed as not having sufficient evidence.

The remainder of the trial court's order, consisting of over three single-spaced pages, addressed various issues in the custody case. Sherdena filed the present appeal (No. 2025-CA-1094-ME) from the denial of the IPO and an appeal (No. 2025-CA-1089-MR) from the custody rulings. She later filed a motion to dismiss Appeal No. 2025-CA-1089-MR, which was granted by order of this Court on November 24, 2025. Sherdena also moved this Court to recuse the trial

-6-

judge, which was denied by order of this Court for her failure to follow the two available remedies of seeking recusal via either (1) a motion with the trial judge under KRS 26A.015, or (2) an affidavit seeking relief from the Chief Justice under KRS 26A.020(1).

On September 4, 2025, this Court, on its own motion, ordered the circuit court to appoint a guardian *ad litem* (GAL) to represent the minor children, C.I., N.I., and A.S. Accordingly, the circuit court appointed a GAL on September 10, 2025, who subsequently filed an appellate brief in support of the trial court's denial of the IPO petition.

## PRELIMINARY ISSUES

1. Appellant's Brief

Sherdena appears before this court without the benefit of legal representation. However, her status as a *pro se* litigant does not exempt her from following the Kentucky Rules of Appellate Procedure (RAP). *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Pertinent to the case *sub judice*, RAP 32(4) mandates an appellant's argument must have "ample . . . citations of authority pertinent to each issue of law[.]"

It is obvious to this Court that Sherdena used Generative AI to write her brief. Notably, two cases cited therein do not exist or were "hallucinated": *E.D. v. D.T.*, 338 S.W.3d 56 (Ky. App. 2011), and *Commonwealth v. Thurman*,

-7-

691 S.W.3d 401 (Ky. App. 2023). An exhaustive search of caselaw, both published and unpublished, yielded no results for either citation.

Had the brief in the case at bar been filed by a licensed attorney we would not hesitate to impose monetary sanctions as we have recently been forced to do.[2] Notably, a litigant's *pro se* status does not make them immune to sanctions by the court.[3]

> Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, [RAP 31(H)]; or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990).

*Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). However, in this case we choose to review the issues and warn Sherdena that any future non-compliant filings with this Court, or any other level of court, may be met with severe penalties.

   2.       <u>Appellee's Failure to File a Brief</u>

Notably, Carlos has not filed an appellee's brief. Under these circumstances, this Court may:

---

[2] *Scott v. Giles*, No. 2025-CA-0643-MR, 2026 WL 969262 (Ky. App. Apr. 10, 2026) (appellee's attorney admonished and fined by separate order).

[3] *Nelson v. Citizens Deposit Bank*, No. 2022-CA-0913-MR, 2024 WL 2788172 (Ky. App. May 31, 2024) (appellant's brief was stricken from the record).

-8-

(a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

RAP 31(H)(3).

We have adopted the first course of accepting Sherdena's statement of the facts and issues. We decline to reverse the judgment, however, because Sherdena's brief and the record do not reasonably appear to sustain such an action. We also do not regard Carlos's failure to file a brief as a confession of error.

**STANDARD OF REVIEW**

A court may enter an IPO if it finds "by a preponderance of the evidence that dating violence and abuse, sexual assault, or stalking has occurred and may again occur[.]" *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021) (quoting KRS 456.060(1)).

> The preponderance of the evidence standard is met when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of dating violence and abuse, sexual assault, or stalking. . . .
>
> A [family] court's findings of fact will only be disturbed if clearly erroneous. Factual determinations are not clearly erroneous if they are supported by substantial evidence.

*Id.* (internal quotation marks and citations omitted). The trial court's decision is reviewed for an abuse of discretion: "The test is not whether this Court would have

decided a case differently but whether the family court's decision was unreasonable, unfair, arbitrary or capricious." *Id.* (internal quotation marks and citation omitted). We are required to show deference to the family court's findings of fact.

> The family court, not the appellate court, is the trier of fact and, as such, is responsible for judging the credibility of witnesses.
>
> Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the [family] court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the [family] court.

*Id.* at 424–25 (citation omitted).

## ANALYSIS

The main portion of the trial court's order, as well as the bulk of the evidence presented at the hearing, related to the ongoing custody case. While factually linked to this case, these issues are beyond the scope of our jurisdiction and our review, which is limited solely to whether the trial court's denial of the IPO was an abuse of discretion. We note also the observation made in the GAL's brief that Sherdena is attempting to use the IPO proceedings to litigate custody issues.

-10-

Sherdena raises numerous arguments on appeal: (1) the trial court applied the wrong legal standard by requiring proof of criminal stalking; (2) the trial court's finding that Sherdena's allegations of harassment were a matter of perception was unsupported by the record; (3) the trial court's commentary demonstrates partiality and reliance on improper factors; (4) the trial court ignored uncontroverted proof of continued harassment and third-party involvement; (5) the trial court failed to consider the totality of the circumstances and the cumulative nature of Carlos's conduct; (6) the trial court's credibility determinations were clearly erroneous and demonstrated judicial bias; (7) the trial court abused its discretion in allowing third parties with a documented history of violence and hostility to supervise the children; and (8) the trial court's cumulative errors deprived Sherdena of a fair hearing.

**(1) The trial court did not apply the wrong standard of proof**.

Sherdena argues that the trial court erred as a matter of law by requiring her to meet the criminal standard of proof "beyond a reasonable doubt." As set forth above, and as Sherdena agrees, the correct standard of proof under KRS 456.060(1) is preponderance of the evidence. Because there is no indication whatsoever that the trial court used the "beyond a reasonable doubt" standard applicable in criminal cases, this argument has no basis.

Sherdena argues that the trial court also erred in finding that the evidence failed to meet the criminal definition of stalking as "an implicit or explicit threat of sexual contact, serious physical injury, or death." The trial court's language directly tracks KRS 508.150(1), which states that a "person is guilty of stalking in the second degree when he intentionally:

(a) Stalks another person; and

(b) Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:

1. Sexual contact as defined in KRS 510.010;

2. Physical injury; or

3. Death.

Sherdena argues that an IPO petitioner does not need to prove the elements of criminal stalking in order to obtain a civil protective order and needs only to establish, by a preponderance of the evidence, that the respondent engaged in a course of conduct that would place a reasonable person in fear of physical injury or severe emotional distress. But the IPO statute expressly directs the trial court to employ the definition of stalking found in our criminal statutes. The definitions section of KRS Chapter 456, which governs civil orders of protection, plainly states that stalking "refers to conduct prohibited as stalking under KRS 508.140 or 508.150, or a criminal attempt, conspiracy, facilitation, or solicitation to commit the crime of stalking[.]" KRS 456.010(8). Sherdena nonetheless contends

that the trial court misinterpreted *Kummer v. Valla*, No. 2018-CA-001333-ME, 2019 WL 1578801 (Ky. App. Apr. 12, 2019), which she claims does not require a petitioner to prove the elements of criminal stalking. But *Kummer* plainly held that the family court in that case erred by finding the appellant stalked the appellee "because the statutory requirements of [KRS 508.150] were not met." *Kummer*, 2019 WL 1578801, at *3.

The trial court's application of the criminal definition of stalking, i.e. placing the victim in reasonable fear of sexual contact, physical injury, or death, was fully in accordance with our statutory and case law:

> [F]or an individual to be granted an IPO for stalking, he or she must at a minimum prove by a preponderance of the evidence that, an individual intentionally engaged in two or more acts directed at the victim that seriously alarmed, annoyed, intimidated, or harassed the victim, that served no legitimate purpose, and would have caused a reasonable person to suffer substantial mental distress, and that these acts may occur again. KRS 508.130 and KRS 456.060. **Additionally**, the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death. KRS 508.150.

*Halloway v. Simmons*, 532 S.W.3d 158, 162 (Ky. App. 2017) (emphasis supplied).

Sherdena contends that her evidence of Carlos's harassing late-night visits, uninvited appearances at her home and hotel, mocking communications, and continued monitoring through the children's devices established a pattern of conduct causing ongoing fear and distress. The trial court determined that this

-13-

conduct did not rise to the level of creating an implicit or explicit threat of sexual

contact, physical injury, or death.  "Findings of fact, shall not be set aside unless

clearly erroneous, and due regard shall be given to the opportunity of the trial court

to judge the credibility of the witnesses."  Kentucky Rules of Civil Procedure (CR)

52.01.  The trial court's weighing of the evidence was well within its role as the

trier of fact, and its decision was neither unreasonable, unfair, arbitrary, nor

capricious.

**(2) The trial court's finding that the harassment was "perceived" was not
clearly erroneous**.

>Sherdena disputes the following findings by the trial court:

>The court must also note that the mother's [Sherdena's]
>text messages did not say what she stated they said.  The
>Court did not find the father [Carlos] to be any more
>controlling than the mother.  Other than the childish
>gifs/pictures the Court did not find that the father's tone
>was any worse than the mother's tone.  The court did not
>see any harassment in the text messages by the father or
>that he was only using the children to go to the mother's
>residence.  The mother seemed to be implying things into
>the text messages that were not stated.  Neither parent
>was very cooperative with the other parent.  The mother
>complained of the father's polyamorous relationship, but
>she used to be in this polyamorous relationship prior
>based on previous domestic violence hearings.  In
>addition, since the May 28th 2025, Order was received
>by the father, he has virtually cut off all unnecessary
>contact with the mother so any previous perceived
>harassment has ceased.  However, the mother was upset
>that he cut off the communication as well.  He is in a no-
>win situation.  If he contacts her or the children, she
>deems it as harassment.  If he does not contact her or the

children, then he's a bad father and bad co-parent. Hopefully the counseling below and Our Family Wizard [communications app] above will help with this situation.

Sherdena objects to the term "perceived harassment," arguing that the trial judge improperly viewed the evidence in the case through his "personal sensibilities." Sherdena contends that the text messages from Carlos were targeted harassment and that there was no contrary evidence. The trial court's findings and comments were made in the second part of its order and pertain in the most part to the custody dispute in Action No. 24-CI-01141. The trial court was attempting to resolve the ongoing conflict between the parties arising from joint custody and timesharing with their children. There is no indication of personal bias; indeed, both parents are criticized for their behavior, with the court observing that "[b]oth parties seem like decent people; the Court does not understand why they have to treat each other in a childish manner." The trial court's determination that Carlos's actions and texts did not rise to the level of warranting the entry of an IPO is based on substantial evidence in the record and will not be disturbed on appeal.

**(3) The trial court's commentary does not demonstrate undue partiality or reliance on improper factors**.

In the same vein, Sherdena argues that the family court's order demonstrates partiality and reliance on improper factors. She contends that the court ventured beyond factual findings into what she describes as "personal

commentary." She takes particular exception to the findings set forth above that describe Carlos as being in a no-win situation because if he contacts Sherdena or the children, she deems it harassment, but if he does not contact her or the children, he is considered a bad father. Sherdena claims that these remarks have no basis in the record and reflect a sympathetic rationalization of Carlos's behavior rather than neutral judicial reasoning. She contends that the court's tone and language are less like a judicial ruling and more like a parent chastising a problem child.

In its role as the factfinder, the trial court must consider the credibility of each witness and the weight to be given to that witness's testimony. The "trier of fact has the right to believe the evidence presented by one litigant in preference to another. . . [and] may believe any witness in whole or in part. The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness." *Bissell v. Baumgardner*, 236 S.W.3d 24, 29 (Ky. App. 2007) (citation omitted). The trial court's comments, made largely in the context of resolving the ongoing custody dispute, do not reveal any impermissible bias and, contrary to Sherdena's claim, are supported by substantial evidence in the record in the form of Carlos's own testimony and the trial court's own observations of the relationship between Sherdena and Carlos.

**(4) The trial court did not ignore proof of ongoing contact and intimidation by Carlos and third-party involvement**.

The trial court did not ignore evidence of ongoing conflict between Carlos and Sherdena, but it did not find a level of intimidation that constituted a threat of sexual contact, serious physical injury, or death. Sherdena points to uncontroverted evidence that Carlos sent her a text message showing a photograph of a lizard, knowing that she is afraid of them. According to Carlos, however, he sent the photograph to show Sherdena a salamander trap that could also be used to trap lizards. Carlos did not deny appearing at Sherdena's hotel uninvited, and did not deny arriving unannounced at her home multiple times. He also conceded that his wife, against whom Sherdena previously obtained a protective order, continues to supervise the children during his visitation. Sherdena does not, however, explain the nature of the alleged risk associated with Carlos's wife's supervision of the children and how it constituted a threat of sexual contact, serious physical injury, or death. Again, the trial court acted well within its discretion in assessing the evidence, and its decision will not be overturned on appeal.

**(5) The trial court did not fail to consider the totality of the circumstances and the cumulative nature of Carlos's conduct**.

Sherdena argues that the trial court failed to consider that Carlos's behavior formed a continuous pattern of coercive control. Sherdena disputes the trial court's characterization of Carlos's GIFs as "childish," arguing that this

-17-

description trivialized their cumulative psychological impact. Similarly, when Carlos refused to turn on the light during one of her video calls with the children, she argues that the court should have admonished the manipulative nature of this conduct and put it in the context of harassment and coercion. She also refers to Carlos leaving her dog on her porch at 6:30 in the morning. Of greater concern is the incident of assault that occurred in October 2021. Sherdena alleges that Carlos's wife made explicit threats at that time to kill her, which the trial court failed to consider. But this disturbing incident occurred more than three years before Sherdena ended her relationship with Carlos in March 2025. Sherdena relies on two Kentucky Court of Appeals opinions for the proposition that repeated, fear-inducing conduct is enough to meet the standard for the issuance of an IPO, even in the absence of verbal threats, but as noted above we are unable to locate either of these opinions. Although repeated, fear-inducing conduct could be sufficient to meet the standard for issuance of an IPO, the record indicates that Sherdena resumed her relationship with Carlos after October 2021, and there is no evidence that he committed any further acts of violence or threatened any further acts of violence in the years that followed. Under these circumstances, the trial court's finding that the evidence did not warrant the issuance of an IPO was not clearly erroneous.

**(6) The trial court's credibility determinations were not clearly erroneous, nor did they demonstrate judicial bias**.

Sherdena's next argument repeats her earlier arguments that the order reflects the trial court's personal judgment rather than evidence-based analysis. She also objects to the trial court's "defensive" tone in its order appointing the guardian ad litem. In its order, the trial court merely questioned whether the appointment of a GAL for the children was necessary in the absence of any allegations of domestic violence or abuse. The comments do not show any impermissible bias.

**(7) The trial court did not abuse its discretion in allowing third parties to supervise the children**.

Sherdena argues that the trial court abused its discretion in not preventing Carlos from leaving their children in the care of his wife and "other hostile third parties," such as Carlos's girlfriend and adult children. Sherdena's arguments in this regard relate more directly to the custody case, in which the trial court found pursuant to KRS 403.320 that Carlos did not represent a serious endangerment to the children and that "[j]ust because the mother and the father and the father's wife and paramour do not get along does not justify modifying the parenting time of the father." For purposes of the IPO, there is no indication that the children were unsafe when they were in Carlos's care. Sherdena obviously has a very volatile relationship with Carlos's wife, Surlita, but there is no indication

that the children are endangered by this. As the GAL observed, while Sherdena is not happy about third-party contact between the children and extended members of Carlos's family, there is nothing to indicate that the children were victims or are in imminent danger.

**(8) The trial court did not commit cumulative errors that deprived Sherdena of a fair hearing**.

Finally, based on the foregoing, the trial court did not commit cumulative errors that deprived Sherdena of a fair hearing. We agree with the GAL that Sherdena's brief contains no arguments or legal authority that could provide a basis for reversal.

## CONCLUSION

For the foregoing reasons, the order denying the petition for an IPO in Action No. 25-D-00106-003 is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | NO BRIEF FILED FOR APPELLEE IDIOKITAS. |
|---|---|
| Sherdena Rocky Ali, *pro se* Hopkinsville, Kentucky | BRIEF FOR APPELLEES MINOR CHILDREN C.I., N.I., AND A.S.: |
| | Ginger Massamore Madisonville, Kentucky |